Settoon et als. vs. Texas & Pacific Railway Co.

No. 12,052.

ARCHEY SETTOON ET ALS. VS. THE TEXAS & PACIFIC RAILWAY COMPANY.

| 48 | 807 |
|----|-----|
| 49 | 1215 |
| 48 | 807 |
| 119 | 578 |
| 48 | 807 |
| f123 | 119 |

Where one goes on premises by implied permission, he does so at his own risk, assuming the responsibility of all risks incident to the place.

Where there are two avenues of travel and the more dangerous one is selected, the party injured can not recover, if the injury inflicted was due to the risk incident to the route selected. The traveler assumes all risks in such cases.

APPEAL from the Fourteenth Judicial District Court for the Parish of Iberville. *Talbot, J.*

*Hébert & Hébert* for Plaintiffs, Appellees.

*Howe, Spencer & Cooke* and *L. DePoorter* for Defendant, Appellant.

Argued and submitted February 12, 1896.
Opinion handed down February 24, 1896.
Rehearing refused April 20, 1896.

The opinion of the court was delivered by

MCENERY, J. The plaintiffs, parents of Henry W. Settoon, brought this suit for damages against the defendant corporation for the death of their son, who was killed by its cars at the town of Whitecastle.

The defence is such as is usually urged in such cases.

There was judgment for plaintiffs in the sum of twelve thousand five hundred dollars, and the defendant appealed.

In front of and alongside of the depot of the railroad there is a switch track, and beyond this the main track.

Between the two tracks the company filled in with cinders for the purpose of affording a dry surface for its passengers who get off and on the trains at this point, and also for the convenience of its employees. It is in evidence that people in the vicinity used this cinder walk, but we do not think that it is shown that there was an implied invitation to the public to use it, any more than its main track, or the switch track. The fact of the road having made the space between the two tracks dry by placing cinders on it in itself is not an invitation to the public to use it. The road might fill in the space between the ties on the main track with gravel, yet this would not be an implied invitation to the traveling public to use the roadbed as a highway. In the vicinity of the depot there is a store, and from this leading to the cinder walk there is a pathway. From the store, leading to Bowie street, back of the depot and toward the town, there is a driveway, and alongside of this is a plank sidewalk. Through and over the cinder walk is the shortest way, probably, to Bowie street, but the death of the plaintiff's son proves it to be the more dangerous. In the early part of the night, about 8 o'clock, plaintiff's son was at the store, called the company's store, or Romantus T. Hart's store. It does not appear that the railroad company is in any way interested in this store. The plaintiff's son, accompanied by one Gonzales, left the store at the hour mentioned, took the small foot-pathway, crossed the switch track and went on the cinder walk, intending to reach Bowie street. They had not proceeded far before they were both struck by a pole, extending over the cinder walk, which was used by the company in moving box cars for the purpose of making up a freight train. Gonzales escaped serious injury and was thrown down. Plaintiff's son was thrown on the switch track, his thighs crushed, and he died in about three hours. The defendant company was engaged in its proper and legitimate calling in making up a freight train. The switch had been placed there for that purpose, and we are not informed that any other more convenient and safe method could have been employed. The plaintiff's son knew what the switch

was there for, and he knew the mode employed by the de-
fendant in making up its train. Conceding, therefore, that he went
on the cinder walk by implied consent of the defendant, the law is
uniform in its expression that if one avails himself of the license, he
does so subject to all the incidental perils.

But the trespasser or one who avails himself of an implied invita-
tion to go on premises is not without a remedy, if the injury inflicted
was wantonly and maliciously done, or if it could have been avoided
in time by the use of viligance. It is not to be expected, however,
that railroad companies will patrol and police their tracks for the
purpose of warning the public of danger. The tracks are silent but
potent signals of danger, and to the cautious the cinder walk would
have warned of impending danger, particularly on a dark night, such
a one as prevailed when plaintiff's son was injured.

The evidence we think is sufficient to show that the plaintiff's son
was warned of danger. The witness Gonzales who accompanied
plaintiff's son says: " He and I were walking from the company's
store, and as we walked up on the railroad there was a train backing
down and as we got about one hundred and fifty feet between the
one hundred and fifty feet above the switch, we were knocked
over with the pole that they were backing with; they were
backing these boxes on the main line to switch them out. The
pole struck us and knocked us over the switch, and he got
run over and died about three hours afterward." And further on
in his testimony he says the night was dark, and that he could not
see when he got on the track the character of the premises, but he
could see that the boxes on the main line were moving, but he
thought it was another train on the main line. The sight of these
boxes moving ought to have been a sufficient warning to the plain-
tiff's son that there was imminent danger in going on the track, or on
the cinder walk between the two tracks. The defendant company can
not be held liable for deceased's want of judgment, or of his mistakes.
He had not been placed by the company in a position of peril when
he was suddenly called upon to make an election as to the best mode
of escape, but he was where he had voluntarily placed himself, and
where he had ample time, by reflection, to retreat from the danger
point.

The brakemen engaged in making up the train and moving the
cars by means of the pole were provided with lights used as signals.

One of the brakemen saw the witness Gonzales and plaintiff's son when they approached the switch track and before they got on it for the purpose of crossing to the cinder walk, and hallooed to them to stop. They paid no attention to the warning. Probably they did not hear the warning, but the witness' statement of the distance is such that they ought to have heard. Plaintiff's counsel, while admitting that the witness gave the warning, contend that it was at such a distance they could not hear, because of the noise of the moving train. This noise ought to have been a warning to them, independent of the warning given by the brakemen. But as the witness saw them, and as he had a light and the switch engine bell was ringing, it is reasonable to suppose that if plaintiff's son had been exercising the slightest prudence he would have seen the brakemen and heard the bells, and at once ought to have known that a train was being made up, and that there was danger in walking in the space between the tracks.

There is a plank walk from the store to Bowie street, to which point plaintiff's son was going. It was the less dangerous route. Plaintiff's son chose the more dangerous one, and he was responsible for the selection, taking the latter with all of its attendant and incidental risks.

The facts in this case bring it within the ruling of Böllinger vs. Railway Co., 47 An. 722, and Burbank vs. Railroad Co., 42 An. 1156.

It is therefore ordered, adjudged and decreed that the judgment appealed from be avoided and reversed, and it is now ordered that plaintiff's demand be rejected at their costs.