521 So.2d 1123 (1988)
Clementine MURRAY and Carmen R. Wright, Guardian ad litem for Adrian Lavonne Wright, Minor
v.
RAMADA INNS, INC., Interstate Motor Lodges of Shreveport, Inc., Barker Development and Management, Inc. and Aetna Casualty & Surety Company.
No. 87 CQ 1846.
Supreme Court of Louisiana.
February 29, 1988.
*1124 Brian D. Smith, Lunn, Irion, Johnson, Salley & Carlisle, Shreveport, H. Alston Johnson, Baton Rouge, for defendants-appellants.
John E. McKay, Peter A. Martin, David Robertson, Baton Rouge, Bennett L. Politz, Shreveport, for plaintiffs-appellees.

CERTIFIED QUESTION FROM THE UNITED STATES COURT OF APPEALS FOR THE FIFTH CIRCUIT
CALOGERO, Justice.
Today we are called upon to resolve the role, if any, which the assumption of risk defense continues to play in Louisiana tort law, given the Legislature's adoption of a comparative fault system. The issue has presented itself in a case certified to us by the United States Court of Appeals for the Fifth Circuit, Murray v. Ramada Inn, Inc., 821 F.2d 272 (1987). The certified question is as follows:
Does assumption of risk serve as a total bar to recovery by a plaintiff in a negligence case, or does it only result in a reduction of recovery under the Louisiana comparative negligence statute?
We accepted certification, 514 So.2d 21 (La.1987), and now answer that assumption of risk does not serve as a total bar to a plaintiff's recovery in a negligence case.
We also note at the outset that the certified question comes to us in a case where the defendants were found strictly liable under La.Civ.Code Ann. art. 2317 (West 1979), the jury having been instructed by the trial judge to apply the provisions of that article when determining whether or not the defendants were liable. Because of that fact, and in order to provide an unambiguous response to the certified question, *1125 we further answer that assumption of risk should not operate as a total bar to recovery regardless of whether the defendant is found negligent or strictly liable.
Assumption of risk terminology has been utilized to describe three basic types of plaintiff conduct. In the vast majority of cases that have involved the assertion of the defense, the plaintiff conduct at issue was in reality a form of contributory negligence. Such conduct henceforth should be exclusively adjudged by the comparative fault principles set forth in La.Civ. Code Ann. art. 2323. (West Supp.1988). In a relative handful of other cases, the assumption of risk defense has been used to deny recovery on the ground that the plaintiff expressly agreed to release the defendant from liability. Our decision here does not require a different result in such cases, which may be resolved in favor of a defendant without resort to assumption of risk. Finally, the defense has been used in a few cases to bar recovery by plaintiffs who have opted to place themselves in situations which involve virtually unpreventable risks, the textbook example being the sports spectator who has the misfortune of being hit by an errant ball. Our decision also does not necessarily call for a different outcome in cases of this type, which may be resolved in appropriate cases on the simple ground that the defendant is not negligent.
Regardless of the context in which it has been utilized, the assumption of risk defense has produced confusion and conceptual difficulties. The doctrine is easily replaceable by other established principles of tort law which more readily comport with civilian tradition, such as comparative fault and duty/risk analysis. Accordingly, and given the Legislature's adoption of a comparative fault system, we conclude that the assumption of risk defense no longer has a place in Louisiana tort law.
(I) FACTS AND PROCEEDINGS IN FEDERAL COURT
On July 30, 1983, Gregory Murray and two of his brothers began doing shallow water dives in the pool at a Ramada Inn Motel in Shreveport. After making two dives without incident, Murray made a third dive and struck his head on the bottom of the pool. Murray suffered instant paralysis, from which he never recovered. He died of his injuries five months later, and his wife and son subsequently brought this wrongful death action in federal district court against the companies which franchised, owned and operated the motel, as well as their respective liability insurers.
At trial, it was established that no lifeguard was on duty at the time of the accident, and that the absence of a lifeguard was a violation of the Louisiana Sanitary Code. It was further established that there were no signs in the area which warned against diving into the shallow end of the pool, even though other Ramada Inn pools had signs which prohibited diving. Other testimony indicated that the motel had previously removed the diving board from the pool, in order to curtail diving.
Gregory knew how to dive, his brother Carl testified, for Gregory had told him that shallow water diving was dangerous. He further stated that shortly before the accident, Gregory had warned his brothers to "be careful" while diving into the pool. There was also a sign near the pool which stated "NO LIFE GUARDSWIM AT OWN RISK."
At the close of the evidence, the defendants asked the trial judge to instruct the jury on the elements of assumption of risk. They also urged that assumption of risk, if found applicable by the jury, should act as a complete bar to the plaintiffs' recovery. The trial judge denied the request and refused to instruct the jury on assumption of risk, concluding that the defense has been replaced by comparative negligence. The jury's verdict was returned in the form of responses to special interrogatories, the pertinent interrogatories and responses being as follows:
(1) Under the circumstances and facts of this case, did the swimming pool as it was being operated present an unreasonable risk of harm which was a proximate cause of Gregory Murray's injury and death?
*1126 Answer: Yes.
(2) Do you find that Gregory Murray was himself negligent and that such negligence was a proximate cause of his own injury or death?
Answer: Yes.
The jury further assessed Murray's negligence at 50%, and awarded $250,000 in damages (before reduction for comparative negligence) to each plaintiff.
On appeal to the United States Fifth Circuit, the defendants argued that the trial judge erred by refusing to instruct the jury on assumption of risk, and by failing to hold that that defense, distinct from comparative negligence, was available as a total bar to recovery. Reviewing the evidence, the Fifth Circuit concluded that "testimony supports the jury's conclusion that Murray knew, appreciated, and voluntarily exposed himself to the risk of diving into the shallow end of the swimming pool." 821 F.2d at 276 (emphasis added). With due respect to our Fifth Circuit brethren, the jury did not make such a specific finding, at least not as is evident from the record. Instead, the jury responded in the affirmative to an interrogatory which asked whether Murray was negligent. However, we take this language in the opinion to mean simply that the Fifth Circuit panel, after reviewing the evidence, concluded that Murray assumed the risk of his injury and subsequent death.
However, the Fifth Circuit also noted that the impact of an assumption of risk finding is "unsettled" in Louisiana in light of the Legislature's adoption of a comparative fault system. 821 F.2d at 274. Thus, they have asked us to decide on certification whether the defense serves "as a total bar to recovery in a negligence case,"[1] or results only "in a reduction of recovery under the Louisiana comparative negligence statute." Id. at 276.
(II) THE ORIGINS AND EVOLUTION OF THE ASSUMPTION OF RISK DEFENSE
(A) Development at Common Law
Assumption of risk is a common law doctrine "not well developed in Louisiana," Rozell v. Louisiana Animal Breeders Cooperative, Inc., 496 So.2d 275, 278 (La. 1986), and has been described as a concept "more difficult to understand and apply than almost any other in the law of torts." Mansfield, Informed Choice in the Law of Torts, 22 La.L.Rev. 17, 17 (1961). In its various attempts to interpret and explain the supposedly distinct nature of the defense, this Court has usually turned to non-civilian sources, such as the Restatement (Second) of Torts. See, e.g., Dorry v. Lafleur, 399 So.2d 559, 560-61 (La.1981); Langlois v. Allied Chemical Corp., 258 La. 1067, 1087, 249 So.2d 133, 141 (La. 1971). Accordingly, we will preface our analysis of the certified question with a discussion of the development of the defense at common law, and the subsequent attempts of Louisiana courts to incorporate the doctrine into civilian jurisprudence.

(1) Contractual Roots

The original premise of the assumption of risk defense appears to have been contractual rather than delictual. Early assumption of risk cases were based on the theory that the plaintiff could not recover because he had actually consented to undertake the risk of injury posed by a given situation, and therefore could not be heard to complain when such an injury occurred. See generally, Wade, The Place of Assumption of Risk in the Law of Negligence, *1127 22 La.L.Rev. 5 (1961). The doctrine was described by the maxim "volenti non fit injuria," meaning "no wrong is done to one who is willing." W. Prosser & J. Wade, Cases and Materials on Torts 534 (5th ed. 1971).
Thus, the defense appeared frequently in early common law cases which involved servants or employees who were injured while performing their employment duties. The right of such employees to recover damages from their employers was barred under the rationale that, as an implied provision of the employment contract, the servant assumed all risks incidental to his normal employment duties. See, e.g., Thomas v. Quartermaine, 18 Q.B.D. 685 (1887); Saxton v. Hawksworth, 26 L.T. 851, 853 (Ex.Ch.1872); Farwell v. Boston & Worcester R.R., 4 Metc. 49 (Mass.1842). See also Wade, supra, 22 La.L.Rev. at 8; V. Schwartz, Comparative Negligence § 9.1 at 154-55 (1974).
The philosophy of the defense, premised on the idea that a plaintiff who confronts a known danger necessarily must have chosen to do so, was "a terse expression of the individualistic tendency of the common law," which regarded "freedom of individual action as the keystone of the whole [legal] structure." Bohlen, Voluntary Assumption of Risk, 20 Harv.L.Rev. 14, 14 (1906). Consequently, assumption of risk was thereafter extended in application far beyond the master-servant relationship. On the theory that "[a] true contract may be indicated by conduct as well as by express language," courts presumed that plaintiffs in certain situations had agreed to accept the risk of injury, even though actual consent was a fiction. Wade, supra, 22 La.L.Rev. at 8.
For example, a plaintiff who accepted an invitation to a party at the defendant's home could not recover for an injury he suffered on the premises because he was "presumed to accept such generous entertainment with an understanding that he accommodates himself to the conditions of his host." Comeau v. Comeau, 285 Mass. 578, 579, 189 N.E. 588, 589-90 (1934). Similarly, the baseball fan who purchased a ticket to a ballgame was usually presumed to have accepted responsibility for the risks inherent in watching a game, including the possibility of being struck by an errant ball. See Kavafian v. Seattle Baseball Club, 105 Wash. 219, 181 P. 679 (1919). As this contractual doctrine began to acquire a separate identity as a tort defense, the need arose to distinguish the assumed risk concept from another tort defense, contributory negligence.

(2) Similarity to Contributory Negligence

As early as 1906, a distinguished commentator expressed the view that it was "essential" that contributory negligence and assumption of risk "should be kept quite distinct." Bohlen, supra, 20. Harv. L.Rev. at 18. But at an even earlier date, there were indications that Professor Bohlen's hopes in this regard were in vain. In Eckert v. Long Island R.R., 43 N.Y. 502, 3 Am.Rep. 721 (1871), plaintiffs sued the railroad company after their decedent was killed in the process of removing a small child from the path of an oncoming train. The New York Court of Appeal affirmed the trial court's judgment in favor of the plaintiffs, but there were two dissenting opinions. One dissent urged that the plaintiff should not recover on the ground that he was contributorily negligent; the other dissenting opinion posited that the plaintiff should not recover because he had assumed the risk. Neither of the dissenting opinions discussed the other, nor attempted to distinguish between the two defenses.
Nonetheless, other courts insisted that there was a distinction between the two doctrines. Contributory negligence was described as the inadvertent or unintentional failure of the plaintiff to exercise due care for his own safety. See James, Contributory Negligence, 62 Yale L.J. 691, 723 (1953). The defense called for an objective inquiry into whether the plaintiff's conduct fell below the standard required of a "reasonable man of ordinary prudence" under the circumstances. W. Prosser & J. Wade, Cases and Materials on Torts, supra at 505 n. 6. Assumption of the risk, on the other hand, was purportedly distinguishable from *1128 contributory negligence because it was governed by a subjective test, which required an inquiry into whether the plaintiff actually knew of the risk and voluntarily confronted the danger. See, e.g., Bartlett v. Gregg, 77 S.D. 406, 92 N.W.2d 654 (1958); Landrum v. Roddy, 143 Neb. 934, 12 N.W.2d 82 (1943). See also Cincinnati, N.O. & T.P.R. Co. v. Thompson, 236 F. 1, 9 (6th Cir.1916) ("Knowledge is the watchword of assumption of risk."). This distinction has been preserved in the Restatement (Second) of Torts, which explains the theory of assumption of risk as follows:
The basis of assumption of risk is the plaintiff's consent to accept the risk and look out for himself. Therefore, he will not be found, in the absence of an express agreement which is clearly so to be construed, to assume any risk unless he has knowledge of its existence. This means that he must not only be aware of the facts which create the danger, but must also appreciate the danger itself and the nature, character and extent which make it unreasonable. Thus the condition of premises upon which he may enter may be quite apparent to him, but the danger arising from the condition may be neither known nor apparent, or if known or apparent at all, it may appear to him to be so slight as to be negligible. In such a case the plaintiff does not assume the risk. His failure to exercise due care either to discover or understand the danger is not properly a matter of assumption of risk, but of the defense of contributory negligence.

Restatement (Second) of Torts, § 496, comment (b) (emphasis added).
However, the theoretical distinctions between the two defenses are often most difficult to maintain in practice. A conceptual difficulty arises from the fact that a plaintiff who knowingly and voluntarily encounters an unreasonable risk of injury may usually be described as one whose conduct has fallen below the standard of due care which would be exercised by a reasonable man under similar circumstances. See Meistrich v. Casino Arena Attractions, Inc., 31 N.J. 44, 55, 196 A.2d 90, 96 (1959) (describing a plaintiff's decision to incur a known risk as failure "to use the care of a reasonably prudent man under all of the circumstances."); see also Lowndes, Contributory Negligence, 22 Geo.L.J. 674, 680 (1934) ("A voluntary and unreasonable assumption of risk affords a defense ... not because the plaintiff has consented to the injury, but because he has acted imprudently.") (emphasis added); V. Schwartz, Comparative Negligence, supra at 155 ("Often when a plaintiff assumes a risk, he does not act as a reasonable man and therefore he is also contributorily negligent.") Accordingly, the two defenses often overlap, and "[t]he vast majority of assumption of risk cases involve nothing more than a particular form of plaintiff negligence." Robertson, Ruminations on Comparative Fault, Duty-Risk Analysis, Affirmative Defenses, and Defensive Doctrines in Negligence and Strict Liability Litigation in Louisiana, 44 La.L.Rev. 1341, 1372 (1984).

(3) Common Law Categories

Yet another difficulty which arises when attempting to analyze this doctrine is that the term "assumption of risk" has been used to describe widely differing types of plaintiff conduct. As a result, commentators and courts have sub-divided the defense into various categories which are based upon the type of plaintiff conduct at issue. There has hardly been unanimous consent among commentators as to where the lines should be drawn in order to establish these categories. Compare 2 Harper and James, Torts 1162-68 (1956) (identifying three types of assumption of risk) with W. Prosser, Torts 303-04 (2d ed. 1955) (describing four "senses" of assumption of risk) and Keeton, Assumption of Risk in Products Liability Cases, 22 La.L.Rev. 122, 124-28 (1962) (identifying six categories of assumption of risk). Others doubt that such lines should be drawn at all. See Robertson, supra, 44 La.L.Rev. at 1371 ("even as a matter of abstract analysis," attempts to differentiate between the various categories of assumption of risk are, for the most part, "hopeless.")
Even so, in answering the certified question, we must be cognizant of the fact that *1129 "assumption of risk" has been used to refer to different concepts in different cases. In order to provide an unambiguous answer to the certified question, we will briefly review the three most commonly utilized categories of assumption of risk, and will specify in Section III of this opinion how our answer to the certified question should affect the disposition of cases in each category.
The first category has been called "express assumption of risk," and it includes those cases, infrequent in occurrence, where the plaintiff "expressly contracts with another not to sue for any future injuries which may be caused by that person's negligence." Anderson v. Ceccardi, 6 Ohio St.3d 110, 451 N.E.2d 780, 783 (1983). See also V. Schwartz, Comparative Negligence, supra at 154; Keegan v. Anchors Inns, Inc., 606 F.2d 35, 37-38 (3rd Cir.1979). Express consent, which might also be called "waiver" or "release," will usually bar recovery by the plaintiff "unless there is a statute or established public policy against it." Wade, supra, 22 La.L. Rev. at 8.
A second category of cases involves what has been called "implied primary" assumption of risk. In such cases, the plaintiff has made no express agreement to release the defendant from future liability, but he is presumed to have consented to such a release because he has voluntarily participated in a "particular activity or situation" which involves inherent and well known risks. Duffy v. Midlothian Country Club, 135 Ill.App. 429, 90 Ill.Dec. 237, 241, 481 N.E.2d 1037, 1041 (1985). Implied primary assumption of risk has been described as "an alternate expression of the proposition that the defendant was not negligent", i.e., either owed no duty or did not breach the duty owed. Meistrich v. Casino Arena Attraction, Inc., 31 N.J. 44, 155 A.2d 90, 93 (1959).
The third and largest category of assumption of risk cases are those in which the plaintiff is said to assume the risk of the defendant's negligence. Even though the defendant in such cases is found to be at fault, the plaintiff is barred from recovery on the ground that he knew of the unreasonable risk created by the defendant's conduct and voluntarily chose to encounter that risk. The plaintiff conduct at issue has been labeled "implied secondary" assumption of risk. However, most common law courts now agree that the plaintiff conduct involved in these cases is nothing more and nothing less than contributory negligence. See Duffy, 90 Ill.Dec. at 241-42, 481 N.E.2d at 1041-42 and authorities cited therein; Meistrich, 155 A.2d at 93-96.

(4) Abandonment of Assumption of Risk

The high courts in a number of states lost patience with the assumption of risk doctrine and abolished it even prior to the widespread adoption of comparative negligence. See, e.g., Rosenau v. City of Estherville, 199 N.W.2d 125, 133 (Iowa 1972); Leavitt v. Gillaspie, 443 P.2d 61, 68-69 (Alas.1968); Parker v. Redden, 421 S.W.2d 586, 592-93 (Ky.1967); Bulatao v. Kauai Motors, Ltd., 49 Haw. 1, 406 P.2d 887, 894-96 (1965); Boulder Valley Coal Co. v. Jernberg, 118 Colo. 486, 197 P.2d 155, 156 (1948). In those states, conduct which previously had been described as assumption of risk was re-classified as contributory negligence.
Many other states were spurred to eliminate the assumption of risk doctrine by the adoption of a comparative fault system. In some of these states, the comparative fault statute enacted by the legislature specifically indicates that conduct which had been described by assumed risk terminology should be re-classified as comparative fault (and should thereby operate only as a comparative reduction of the plaintiff's recovery, rather than a complete bar). See, e.g., Ariz.Rev.Stat.Ann. § 12-2505 (Supp.1987); Mass.Gen.Laws Ann. ch. 231 § 85 (West 1985). In other jurisdictions which have adopted comparative fault statutes that do not expressly refer to assumption of risk, the courts have subsequently determined that assumption of risk should not survive as a distinct defense that totally bars recovery. See, e.g., Mizushima v. Sunset Ranch, Inc., 737 P.2d 1158, 1161 (Nev. *1130 1987); Salinas v. Vierstra, 107 Idaho 984, 695 P.2d 369, 372-75 (1985); Wilson v. Gordon, 354 A.2d 398, 401-03 (Me.1976).
Some states have retained assumption of risk terminology only for the purpose of referring to "express" or "contractual" consent cases. See, e.g., Mizushima, 737 P.2d at 1161; Wilson, 354 A.2d at 401-03; Segoviano v. Housing Auth. of Stanislaus City, 143 Cal.App.3d 162, 191 Cal.Rptr. 578, 583 (1983). Other jurisdictions have insisted on the total elimination of the defense, most notably New Jersey in McGrath v. American Cyanamid Co., 41 N.J. 272, 196 A.2d 238, 240-41 (1963). There, the court stated that the term assumption of risk is "so apt to create mist that it is better banished from the scene. We hope we have heard the last of it." Id.
All told, it appears that sixteen states have totally abolished the defense, and seventeen more have eliminated the use of assumption of risk terminology in all cases except those involving express or contractual consent by the plaintiff. See H. Woods, Comparative Fault §§ 6.1-6.8. (2d ed. 1987). After long ago arriving in the torts arena as a refugee from contract law, assumption of the risk now appears to be passing from the scene in most common law jurisdictions.
(B) Civil Law Development
While the rough equivalent of an assumption of risk defense may have been recognized at Roman law, see F. Stone, 12 Louisiana Civil Law Treatise, Tort Doctrine, § 293 (West 1977), there is little evidence of any "organized body of civilian doctrine" on the subject. Bell v. Jet Wheel Blast, Division of Ervin Industries, 462 So.2d 166, 169 (La.1985) (discussing the similar absence of early civilian authority on comparative fault). Louisiana courts appear simply to have borrowed the assumption of risk doctrine from the common law, part and parcel with the analytical problems that have confronted courts in other states.
In one of the earliest appearances of the defense in Louisiana, it was apparent that the courts of this state would have difficulty, just as the common law jurisdictions had, in maintaining a distinction between assumption of risk and contributory negligence. Settoon v. Texas & Pacific Railway Co., 48 La.Ann. 807 (1896) involved a claim for damages against the railroad company which arose after plaintiff's decedent was struck by a pole which extended from a box car, thrown onto nearby switch tracks and crushed to death. The court determined that the decedent had chosen one of two available paths that would have taken him to his intended destination, that the path he did choose was the most dangerous, and that, accordingly, "he was responsible for the selection, taking the latter with all its attendant and incidental risks." 48 La.Ann. at 810. On this basis, plaintiffs were denied recovery.
Although the Settoon court seemed to premise its holding on an assumption of risk rationale, it also clearly indicated that it believed the victim was negligent. "[I]t is reasonable to suppose that if plaintiff's son had been exercising the slightest prudence he would have seen the brakemen and heard the bells, and at once ought to have known ... there was danger...." Id. (emphasis added). This nineteenth century case foreshadowed the decades of difficulty which Louisiana courts would encounter while attempting to maintain a valid distinction between contributory negligence and assumption of risk.
This Court attempted to maintain the same distinction between the defenses that had been utilized at common law. We have held on numerous occasions that assumption of risk turns on the plaintiff's actual knowledge of the danger, and whether he has voluntarily encountered a known risk, whereas contributory negligence is governed by the objective standard of whether the plaintiff knew or should have known of the risk. Bass v. Aetna Ins. Co., 370 So.2d 511 (La.1979); Prestenbach v. Sentry Ins. Co., 340 So.2d 1331 (La.1976); McInnis v. Fireman's Fund Ins. Co., 322 So.2d 155 (La.1975); Langlois v. Allied Chemical Corp., 258 La. 1067, 249 So.2d 133 (1971).
However, even as we held that assumption of risk involves a purely subjective *1131 standard and turns on whether the plaintiff actually knew of the risk, we were willing to impute such knowledge to the plaintiff whenever it could be assumed from the given facts that he must have known of the danger. See Dorry v. Lafleur, 399 So.2d 559, 561-63 (La.1981) and authorities cited therein. Such analysis made the distinction between contributory negligence and assumption of risk all the more obscure. See, e.g., Bass v. Aetna Ins. Co., 370 So.2d at 515 (Blanche, J., dissenting on the ground that plaintiff assumed the risk because she "knew, or reasonably should have known" of the risk of injury, based upon "her own personal experience...."); Prestenbach v. Sentry Ins. Co., 340 So.2d at 1335 (assumption of risk applies when, based upon certain observations, the plaintiff "should reasonably have known that a risk was involved.")
Louisiana courts have not followed the common law tradition of dividing assumption of risk into various categories, such as "express," "implied primary," and "implied secondary." Nonetheless, assumption of risk terminology has been applied by our courts to identifiable classes of plaintiff conduct, which can be analyzed in a manner similar to that used at common law.
In a limited number of cases, assumption of risk terminology has been used to defeat recovery where the plaintiff has expressly agreed with the defendant, in writing, to accept the risk of injury. See, e.g., Robillard v. P & R Racetracks, Inc., 405 So.2d 1203 (La.App. 1st Cir.1981); Forsyth v. Jefferson Downs, Inc., 152 So.2d 369 (La.App. 4th Cir.1962), writ refused, 244 La. 895, 154 So.2d 767 (1963). Robillard and Forsyth would probably be classified at common law as "express consent" cases.
In another identifiable but small class of cases, similar to the "implied primary" category used at common law, assumption of risk has been employed to deny recovery where the plaintiffs have participated in certain activities, or placed themselves in situations which involve inherent and well known risks. See, e.g., Bonanno v. Continental Casualty Co., 285 So.2d 591 (La. App. 4th Cir.1973) (plaintiff assumed risk of injury suffered in haunted house exhibit); Colclough v. Orleans Parish School Board, 166 So.2d 647 (La.App. 4th Cir. 1964) (plaintiff assumed risk of injury by standing on sidelines of a football game); Lorino v. New Orleans Baseball & Amusement Co., 16 La.App. 95, 133 So. 408 (Orl.Cir.1931) (baseball spectator who elected to sit in area where balls are known to fly into stands assumed risk of injury).
Most Louisiana decisions which involve the assertion of the assumption of risk defense, however, are cases in which the plaintiff was found to have disregarded a risk created by the defendant's fault (called "implied secondary" assumption of risk at common law). In these cases, it is not realistically possible to distinguish the plaintiff conduct at issue from contributory negligence. See, e.g., Richards v. Marlow, 347 So.2d 281 (La.App.2d Cir.), writ denied, 350 So.2d 676 (La.1977) (regardless of defendant's negligence, plaintiff could not recover because she assumed the risk of trying to walk on a wet pipe); Giovingo v. Cochiara, 449 So.2d 699 (La.App. 5th Cir.), writ denied 456 So.2d 165 (La.1984) (plaintiff who slipped on concrete boat ramp assumed the risk of injury because he knew that the ramp was slippery); Passman v. Allstate Ins. Co., 208 So.2d 386 (La.App. 1st Cir.), application denied 252 La. 265, 210 So.2d 507 (1968) (plaintiff who had been warned of tractor driver's inexperience assumed the risk of injury by riding on a wagon attached to the tractor). It is a fiction to say that plaintiffs in cases such as these actually consented to, or assumed, the risk of injury. It is much more accurate to conclude that such plaintiffs negligently disregarded a known risk, or, in other words, were contributorily negligent.
However, when the plaintiff's cause of action sounded in negligence, there was often no need for courts to dwell upon whether the plaintiff's conduct constituted assumption of risk, contributory negligence or both. Prior to the adoption of comparative fault, the result was the same regardless of the "technical label" chosen to describe the plaintiff's conduct; the successful assertion of either defense meant no recovery for the plaintiff. See Passman v. *1132 Allstate Ins. Co., 204 So.2d at 387-88. On the other hand, in strict liability cases which arose prior to the adoption of comparative fault, and in which contributory negligence was held to be legally unavailable as a defense, we indicated that assumption of risk could nonetheless be urged as a total bar to the plaintiff's recovery. See, e.g., Dorry v. Lafleur, 399 So.2d at 561; Langlois v. Allied Chemical Corp., 258 La. at 1086; 249 So.2d at 140.
Thus, by 1980, when the comparative fault system adopted by the Legislature became effective, the status of the law of assumption of risk could charitably be described as confusing. As discussed above, the defense seemed indistinguishable from contributory negligence in most cases, yet could be asserted in strict liability cases even when the defense of contributory negligence was legally unavailable. This case squarely presents the issue of whether the assumption of risk doctrine should have continuing viability now that Louisiana is a comparative fault jurisdiction.[2]
(III) ANSWER TO THE CERTIFIED QUESTION
In 1979, Louisiana Civil Code article 2323 was rewritten to eliminate the judicially created rule that contributory negligence was a complete bar to the plaintiff's recovery, and to substitute a procedure by which any negligence on the part of the plaintiff would operate as a percentage reduction of his recovery:
When contributory negligence is applicable to a claim for damages, its effect shall be as follows: If a person suffers injury, death or loss as the result partly of his own negligence and partly as the result of the fault of another person or persons, the claim for damages shall not thereby be defeated, but the amount of damages recoverable shall be reduced in proportion to the degree or percentage of negligence attributable to the person suffering the injury, death or loss. (Amended by Acts 1979, No. 431 § 1, eff. Aug. 1, 1980).
One question which this change in the law presented was whether assumption of risk should continue to operate as a complete bar to the plaintiff's recovery, even though contributory negligence no longer constitutes such a bar. Noting that Louisiana courts of appeal have taken "divergent views" on this issue,[3] the Fifth Circuit certified to us the question of whether assumption of risk bars recovery totally, or only results in a reduction of recovery under article 2323.
Our response is that the common law doctrine of assumption of risk no longer has a place in Louisiana tort law. The types of plaintiff conduct which the defense has been used to describe are governed by civilian concepts of comparative fault and duty/risk. Assumption of risk *1133 should not survive as a distinct legal concept for any purpose, and certainly can no longer be utilized as a complete bar to the plaintiff's recovery.
Because the term "assumption of risk" is almost always used to describe plaintiff conduct that is indistinguishable from contributory negligence, it would make no sense for us to hold otherwise. Under article 2323, plaintiff negligence results only in a comparative reduction of recovery, and it would be anamolous for us to hold that the same conduct which results only in a reduction of recovery when it is described as "comparative negligence" somehow should operate as a total bar to recovery when described as "assumption of risk." As another state supreme court considering this issue has concluded, "it would be the ultimate legal inconsistency to reject contributory negligence as an absolute defense yet at the same time allow its effect to continue under the guise of assumption of risk." Salinas v. Vierstra, 107 Idaho 984, 695 P.2d 369, 374 (1985).
Defendants argue that because article 2323 does not expressly mention assumption of risk, the Legislature intended that the defense would survive the adoption of comparative fault as a complete bar to recovery. Their reasoning is that the Legislature had to be aware of the existence of the defense at the time article 2323 was enacted, and if the Legislature had intended to alter the application of the doctrine, it would have expressly referred to assumption of risk in the code article. Instead, the article simply states it is applicable "[w]hen contributory negligence is applicable to a claim for damages," and does not refer to assumption of risk.
However, the fact that article 2323 does not contain the words "assumption of risk" is not dispositive of the issue. As we have noted elsewhere, it is equally plausible to argue that if the Legislature had intended to preserve the defense as a total bar to recovery, it could have easily and expressly stated that intention in article 2323. Turner v. New Orleans Public Service, Inc., 476 So.2d 800, 804 (La.1985). The dispositive factor here should be that there is no doubt that the Legislature intended by article 2323 to eliminate contributory negligence as a complete bar to recovery and to make comparative fault applicable to those cases in which the plaintiff's conduct may result in a reduction of recovery. Bell v. Jet Wheel Blast, 462 So.2d 166, 171 (La. 1985). Beyond that clearly expressed intention, we have observed that the Legislature left the "tough details" regarding the scope and application of article 2323 "for the courts to decide." Turner, 476 So.2d at 804. The issue we are called upon to decide here is whether the survival of assumption of risk as a defense which totally bars recovery would be consistent with the Legislature's expressed intention of eliminating the total bar of contributory negligence.
The answer is that the survival of assumption of risk as a total bar to recovery would be inconsistent with article 2323's mandate that contributory negligence should no longer operate as such a bar to recovery. The arguments raised by the defendants in support of a rigid construction of the wording of article 2323 do not take into consideration the fact that, in all but a relative handful of cases (the express and implied primary assumption of risk cases, which are affected by this opinion in the manner discussed below), "assumption of risk" is simply a term that has been used to describe a form of contributory negligence. The statute clearly dictates that contributory negligence shall no longer operate as a complete bar to recovery, and the intent of the statute should not be frustrated by the unfortunate practice of describing certain plaintiff conduct as "assumption of the risk." To the contrary, the true intent of the statute will be fulfilled by the application of comparative fault principles to such alleged plaintiff negligence, thereby eliminating the inequities inherent in the "all or nothing" recovery rules that prevailed prior to the adoption of comparative fault. Turner, 476 So.2d at 800. As we stated in Bell v. Jet Wheel Blast, "the adoption of a system of comparative fault should, where it applies, entail the merger of the defenses of misuse and assumption of risk into the general scheme *1134 of assessment of liability in proportion to fault." 462 So.2d at 172.
Thus, in any case where the defendant would otherwise be liable to the plaintiff under a negligence or strict liability theory, the fact that the plaintiff may have been aware of the risk created by the defendant's conduct should not operate as a total bar to recovery. Instead, comparative fault principles should apply, and the victim's "awareness of the danger" is among the factors to be considered in assessing percentages of fault. Watson v. State Farm Fire & Cas. Ins. Co., 469 So.2d 967, 974 (La.1985).[4]
In order to avoid further confusion in this area of the law, we believe that the courts, lawyers and litigants would best be served by no longer utilizing the term assumption of risk to refer to plaintiff conduct. We belatedly join the New Jersey Supreme Court in expressing our view that assumption of risk terminology "is better banished from the scene." McGrath v. American Cyanamid Co., 196 A.2d at 240-41.
However, our answer to the certified question does not change the law in those cases where the plaintiff, by oral or written agreement, expressly waives or releases a future right to recover damages from the defendant.[5] Assuming that the existence of a voluntary and express pre-accident agreement is proven, and that no public policy concerns would invalidate such a waiver (see also La.Civil Code art. 2004), the plaintiff's right to recover damages may be barred on a release theory. Applying duty/risk analysis to this situation, it can be concluded that the defendant has been relieved by contract of the duty that he otherwise may have owed to the plaintiff.
Nor does our decision today mean that the result reached in the sports spectator or amusement park cases (common law's "implied primary" assumption of risk cases) was incorrect. However, rather than relying on the fiction that the plaintiffs in such cases implicitly consented to their injuries, the sounder reasoning is that the defendants were not liable because they did not breach any duty owed to the plaintiffs.
For example, in the classical baseball spectator setting, the case for negligence may often fall short on the question of whether the defendant breached a duty owed to the plaintiff. While a stadium operator may owe a duty to spectators to provide them with a reasonably safe area from which they can watch the game, it is generally not considered reasonable to require the stadium operator to screen all spectator areas from flying baseballs. Even while applying assumption of risk terminology to these types of cases, courts have simultaneously recognized that the defendant was not negligent because his conduct vis-a-vis the plaintiff was not unreasonable. See Lorino v. New Orleans Baseball & Amusement Co., 16 La.App. at 96, 133 So. at 408 ("It is well known ... that it is not possible ... for the ball to be kept at all times within the confines of the playing field.") On the other hand, the *1135 failure to protect spectator areas into which balls are frequently hit, such as the area behind home plate, might well constitute a breach of duty. These types of cases will turn on their particular facts and may be analyzed in terms of duty/risk. The same analysis applies in other cases where it may not be reasonable to require the defendant to protect the plaintiff from all of the risks associated with a particular activity. See, e.g., Bonanno v. Continental Casualty Co., 285 So.2d at 592 (operator of haunted house provided adequate supervision and space for patrons, and therefore was not negligent).
(IV) APPLICATION OF THE ANSWER TO THE CERTIFIED QUESTION TO THE FACTS OF THIS CASE
Having reviewed the impact that our answer to the certified question will have on the different types of cases in which courts have relied on assumption of risk terminology, we return to the facts of this case. The defendants urge that the plaintiffs' decedent assumed the risk of his injuries by diving into the shallow end of a swimming pool, even though, according to the evidence, he had actual knowledge of the dangers associated with that activity. The same conduct which is described by the defendants as assumption of risk, however, also constitutes contributory negligence, since it may be said that a reasonable, prudent person exercising due care for his own safety would not have engaged in shallow water diving. While defendants concede that the successful assertion of the contributory negligence argument can only result in a percentage reduction of recovery under article 2323, they argue that the same evidence used by the jury to assess comparative negligence at 50% should be used to bar recovery under the assumption of risk doctrine. For reasons previously discussed, the law cannot allow such an anamoly. The plaintiffs should be entitled to recover the full amount of their damages, minus a percentage assessed as comparative fault.
An attempt to analyze this plaintiff's conduct in terms of assumption of risk highlights the weakness of the underlying premise of the defense: the fiction that the plaintiff who disregards a known risk necessarily has consented to his own injury and agreed to relieve the potential defendant of liability for that injury. It cannot be seriously contended that Murray, by attempting to dive into the shallow end of the pool, consented to the risk that he would suffer a fatal blow to his head on the bottom of the pool, and thus agreed in advance to relieve the defendants from liability for his injury. To the contrary, it is obvious from the record that Murray thought that he could safely dive into the shallow end of the pool, an assumption on his part which turned out to be a grave mistake. As Prosser has noted, a miscalculation of the risk constitutes contributory negligence:
Suppose ... that the plaintiff dashes into the street in the middle of the block, in the path of a stream of automobiles driven in excess of the speed limit. Given these facts, the ordinary entering law student would immediately say that he has of course assumed the risk. Yet by no stretch of the imagination can such conduct be regarded as manifesting consent that the drivers shall be relieved of the obligation of care for the plaintiff's safety. Rather it clearly indicates a demand, and an insistence, that they shall look out for him and use all reasonable care to protect him. No consent that they shall not is implied on any rational basis. This is an ordinary case of contributory negligence, and not assumption of risk at all.
W. Prosser & J. Wade, Cases and Materials on Torts, supra, at 535.
Another argument raised by the defendants deserves attention here, because in light of our holding today, similar arguments might arise in future cases. Defendants suggest that, leaving aside the doctrine of assumption of risk, they should not be liable because they had no duty to protect the decedent from a danger of which he had knowledge. In essence, defendants contend here that they were not negligent because the plaintiff voluntarily encountered the risk.
*1136 The Fifth Circuit wisely rejected this contention. 821 F.2d at 276. If accepted, defendants' argument would inject the assumption of risk doctrine into duty/risk analysis "through the back door." By that, we mean that the argument attempts to define the defendant's initial duty in terms of the plaintiff's actual knowledge, and thereby seeks to achieve the same result which would be reached if assumption of risk were retained as a defense, i.e., a total bar to the plaintiff's recovery.
A defendant's duty should not turn on a particular plaintiff's state of mind, but instead should be determined by the standard of care which the defendant owes to all potential plaintiffs. See Robertson, supra, 44 La.L.Rev. at 1378. Here, for example, the defendants owed a duty to all potential users of the pool to operate that facility in a reasonably safe fashion. Further, the defendants faced strict liability under civil code article 2317 if the pool constituted an unreasonably dangerous thing over which they had custody and control.
The jury found that the pool was operated in an unreasonably dangerous manner after hearing evidence on the absence of warning signs regarding diving, the removal of the diving board and the absence of a lifeguard. The jury further determined that the unreasonably dangerous manner in which the pool was operated was a cause of the decedent's injuries and subsequent death. Once these determinations were made, it was then proper for the jury to consider the decedent's alleged fault. It would not have been proper for the jury to turn this analytical process on its head by finding, as urged by the defendants, that this particular plaintiff's knowledge of the risk rendered the pool operator free from fault. If such a finding were allowed to stand, the decedent's negligent disregard for the risk, i.e., his contributory negligence, would bar recovery despite defendants' fault, and the comparative fault rules of article 2323 would be circumvented.
Again, this is not to say that a duty is owed or breached in all situations that involve injury. We have held, for example, that the duty which a landowner owes to persons entering his property is governed by a standard of reasonableness, and that a potentially dangerous condition that should be obvious to all comers is not, in all instances, unreasonably dangerous. See, e.g., Shelton v. Aetna Casualty & Surety Co., 334 So.2d 406, 410-11 (La. 1976). However, the key to a finding of no liability in such cases is not the plaintiff's subjective awareness of the risk, but the determination that the defendant did not act unreasonably vis-a-vis the plaintiff, or injure the plaintiff through the instrumentality of an unreasonably dangerous thing in his custody. The determination of what the plaintiff knew regarding the risk of injury is made after fault on the part of the defendant has been established, and is governed by the comparative fault principles ennunciated in La.Civ.Code art. 2323.

CERTIFIED QUESTION ANSWERED.
WATSON, J., concurs in the answer to the certified question.
DENNIS, J., concurs with reasons.
COLE, J., subscribes to the opinion and assigns additional reasons.
DENNIS, Justice, concurring.
I respectfully join in the main part of the majority's answer to the certified question which in essence rejects any defense, jury instruction or legal terminology based on assumption of risk as having been superseded by comparative fault. See also, Turner v. NOPSI, 476 So.2d 800, 804 (La. 1985) ("The inequity in the `all-or-nothing' recovery chances of a personal injury victim was recognized [by the comparative negligence law. C.C. art. 2323 (1979) ]."); Bell v. Jet Wheel Blast, 462 So.2d 166, 170 (La.1985) ("Thus, the net effect of article 2323, as amended, is to prevent the courts from applying any defense more injurious to a damage claim than comparative negligence."). However, I find the opinion's discussion of express assumption of risk beyond the ambit of the certified question and the application of the law to the facts of the federal case outside the scope of our *1137 function. Therefore, I do not join in these parts of the majority opinion.
COLE, Justice, assigning additional reasons.
Since the adoption of a comparative fault system in this State by Act 431 of 1979, amending La.Civ.Code art. 2323, uncertainty and confusion have existed as regards the type of cases included within its ambit, and as regards the role of traditional tort defenses. This case is not a proper vehicle for answering all the questions but does advance the concept that, except in limited situations, the doctrine of comparative fault applies in all cases where the defendant would otherwise be liable under negligence or strict liability theory. The narrow scope of the question certified does, of course, preclude consideration in this opinion of whether or not comparative fault should be applied under theories of liability other than those premised upon La.Civ. Code arts. 2315 and 2317. However, in another opinion handed down concurrently with this one, the doctrine of comparative fault is applied for the first time by this court in a cause of action arising under La.Civ.Code art. 2321. See, Howard v. Allstate Ins. Co., 520 So.2d 715 (La.1988). Regardless of the theory upon which liability is based, it appears evident that the application of comparative fault precepts in the multitude of cases affected by this decision necessarily eliminates the efficacy of "assumption of risk" and, apparently, negates the need to speak in terms of "victim fault." Those defenses have seemingly gone the way of "contributory negligence."
The opinion in this case continues to validate the duty/risk analysis. There is no suggestion a defendant will be liable in those instances where there is no duty to protect against the risk of injury sustained by the plaintiff. One may conclude that were the facts in this case such as to warrant, the case could have been decided upon the basis that the defendant owed no duty; or, on the basis the plaintiff was 100% at fault, thus defeating an attempt to apportion fault.
NOTES
[1] Although the Fifth Circuit phrases the question in terms of a "negligence case," we note that the parties assert in brief that the defendants were found strictly liable under article 2317, as custodians of a pool that was unreasonably dangerous because of the absence of appropriate warning signs and a lifeguard. Further, the record reflects that the trial judge instructed the jury to assess the liability issue under the strict liability provisions of civil code article 2317. On the other hand, the jury found that the pool was "operated" in an unreasonably dangerous manner, which perhaps led the Fifth Circuit to conclude that the basis of liability was negligence. In any event, our answer to the certified question would be the same regardless of whether the jury's finding was based on negligence or strict liability. For reasons set forth in the body of the opinion, assumption of risk should not be available as a total bar to recovery in either instance.
[2] In cases arising prior to the adoption of comparative fault, this Court did not have occasion to decide whether assumption of risk should have continuing viability. Instead, we frequently and repeatedly found that the defense could not be successfully asserted based upon the facts of the case before us. See Rozell v. Louisiana Animal Breeders Co-Op, 496 So.2d at 278-79 (plaintiff did not assume an unreasonable risk of injury by entering pen where bull was kept); Bass v. Aetna Ins. Co., 370 So.2d at 514-15 (plaintiff did not subjectively comprehend any risk of injury associated with praying in church aisle); Dorry v. Lafleur, 399 So.2d at 561-63 (plaintiff was not aware before the accident of the puddle in which he slipped while skating); Dofflemyer v. Gilley, 384 So.2d 435, 438-39 (La.1980) (no proof in record that plaintiff actually knew or understood the risk of being struck by a car); Prestenbach v. Sentry Ins. Co., 340 So.2d at 1335-36 (no proof that passenger actually knew driver was intoxicated); McInnis v. Fireman's Fund Ins. Co., 322 So.2d at 157 (no proof that plaintiff knew of risk associated with lifting certain equipment); Langlois v. Allied Chemical Corp., 258 La. at 1088-89, 249 So.2d at 133 (plaintiff fireman may have assumed certain risks, but not the risk created by the defendant's conduct).
[3] Compare Aguillard v. Langlois, 471 So.2d 1011 (La.App. 1st Cir.), writ denied, 476 So.2d 356 (La. 1985) (assumption of risk is no longer a complete bar to recovery, and should be analyzed under the comparative fault provisions of art. 2323) with Brown v. Harlan, 468 So.2d 723 (La.App. 5th Cir.), writ dismissed, 472 So.2d 26 (La.1985) (holding, without extensive discussion, that assumption of risk continues to serve as a total bar to recovery in both negligence and strict liability cases.).
[4] Of course, we have recognized that there are some strict liability cases in which comparative fault principles may not be employed to reduce the plaintiff's recovery, Bell, 462 So.2d at 171-73, and this opinion does not change the jurisprudence in that respect.
[5] The case on certification does not fall into either the express or implied primary assumption of risk categories, as the decedent's conduct is indistinguishable from contributory negligence, see Section (IV) of this opinion, infra, and thus would be categorized as implied secondary assumption of risk at common law. However, because the term assumption of risk has been given different meanings in different contexts, the certified question "cannot be answered with a single, all-encompassing statement on `assumption of risk' for all instances." Amicus Curiae Brief of Louisiana Association of Defense Counsel (LADC) at 12. The LADC acknowledges in its brief that secondary assumption of risk cases should be "relegated to treatment as with other forms of contributory negligence," but argues that the defense should be retained in express consent and implied primary situations. Id. We accordingly give separate attention in our answer to the certified question to the impact which our decision should have on those occasional cases which would be categorized at common law under the express or implied primary assumption of risk labels.