McDONALD, J.,
concurring.
| TFor the following reasons I respectfully concur, agreeing only in the result reached. The majority relies on Broussard v. State, Office of State Buildings, 2012-1238 (La.4/5/13), 113 So.3d 175, in reversing the granting of summary judgment by the trial court. They conclude that Broussard “mandates that whether an open and obvious condition is an unreasonable risk of harm, such that liability may be imposed, is not a determination of whether a duty exists (a question of law), but rather, it is a determination of whether that duty was breached, a question of fact.” The majority concludes that summary judgment is not appropriate in determining whether an open and obvious defect is an unreasonable risk of harm because such a determination is a question of fact that must take into consideration the comparative fault of the victim.
There has been some disagreement in the prior case law concerning defects that are open and obvious.[1] Some cases have held that there is no duty owed to an lainjured plaintiff who either knew or should have observed the defect. This is a legal issue that is decided by the court. Other cases have held that there is a duty to everyone whether careful or careless, but if the defect is open and obvious, there is no breach of the duty. This is a factual issue that is decided by the fact-finder, normally a jury. In Broussard, the supreme court appeared prepared to resolve *749 these issues. In so doing, they stated that they granted writs to determine “under the manifest error doctrine, whether a defective condition is more properly considered an open and obvious hazard where no duty is owed, rather than an unreasonably dangerous condition where comparative fault is applicable.” Broussard, 2012-1238, 113 So.3d at 179. I note that a question of fact is subject to a manifest error review while a question of law is subject to a de novo review. By limiting the inquiry to an analysis under the manifest error doctrine, it would seem that the answer is implicit; since it concerns a determination of facts-it is the task of the jury or fact-fínder. The high court goes on further, “... we find the analytic framework for evaluating an unreasonable risk of harm is properly classified as a determination of whether a defendant breached a duty owed, rather than a determination of whether a duty is owed ab initio ... the issue of whether a duty is owed is a question of law, and the issue of whether a defendant has breached a duty owed is a question of fact. The judge decides the former, and the fact-finder— judge or jury — decides the latter.” Broussard, 2012-1238, 113 So.3d at 185.
|sThis should have ended the inquiry. And if so, the majority is correct, comparative fault is applicable in cases involving an open and obvious defect. The issue is resolved.
However, having started with this result directed theory, the supreme court then deviated into a discussion of open and obvious defects in relation to various prior decisions. But, the court failed to address the fact that some of the decisions were decided on a breach of duty and others that no duty was owed. The court begins by stating: “[W]e have consistently echoed one central theme throughout our open and obvious jurisprudence: If the complained-of condition should be obvious to all, then it may not be unreasonably dangerous.” Broussard, 2012-1238, 113 So.3d at 188. The court inexplicably cites Pitre and Murray in support of its thesis. However, both of these cases were decided on the question of duty, a legal question decided by the court, rather than a breach issue, to be decided by the fact-finder. Both are inapposite to the court’s theory that the evaluation of an unreasonable risk is a question of a breach of the duty owed. The court then attempts to reconcile its current theory with the other prior decisions (Pryor, Dauzat, and Eisenhardt) under the idea that the defect must be apparent to all or everyone for it to be open and obvious. However, like Pitre and Murray, Pryor is also a no duty case rather than a breach of duty case. While Dauzat and Eisenhardt might involve a breach of the duty rather than no duty, they are really more distinguishable because of the special knowledge that the plaintiff had in each. While this might have created a reasonable exception to the general rule for those who have either special knowledge or professional knowledge, the supreme court specifically declined to adopt such an exception.[2]
Next, the court opines that there is no “bright-line” rule in these cases. The risk-utility analysis will lead to different results. However, the court emphasizes 14that “[I]n order for a defect to be considered open and obvious, the danger created by that defect must be apparent to all comers.” Broussard, 2012-1238, 113 So.3d at 192. I believe the court has adopted a “bright-line” rule. While there may not be a “bright-line” rule on whether a condition is apparent to the world, the new rule seems to be that the fact-finder must now *750 determine if the duty has been breached and assign fault accordingly using the risk-utility analysis.
The supreme court had the opportunity to directly address the question of whether a condition that is open and obvious to everyone absolves the defendant of any duty to the plaintiff or whether a duty is owed to both blameless and careless plaintiffs, alike, and the question is whether there was a breach of the duty. If a breach is found, then comparative fault would be assigned to the parties. The court failed to directly address this issue. Rather than face the prior jurisprudence directly and resolve the confusion, the court attempted to reconcile these conflicting decisions.
I believe it would have been a better course of action for the supreme court to have adopted the theory proposed by Professors Maraist, Johnson, Galligan, and Corbett in explaining Dauzat[3] that a class of people is created who have specialized knowledge and experience such that the risk should be open and obvious to all members of this specialized class. In such a case the defendant would owe no duty to the members of this class because the defect is so open and obvious to them. Such an application could be applicable to the facts of our case since Ms. Currie had traversed the sidewalk on numerous occasions and had specialized knowledge of the condition that existed on the sidewalk. Because she had lived there for some time, she was well aware that water frequently pooled or |fistood at this location and created a risk or harm. However, the supreme court specifically rejected this analysis.[4]
In attempting to reconcile these various decisions, I believe the supreme court chose a case with poor facts. Broussard is about an elevator that failed to stop evenly with the adjacent floor. It is axiomatic that elevators make numerous trips back and forth among the various floors. Both the state and the employees in the building were aware that this elevator was prone to uneven stopping. There is a reference to one instance in which the elevator stopped more than 18 inches above the floor. Each time the elevator stops it creates a different scenario. Most often the elevator stops even with the floor; sometimes it stops lower than the floor and sometimes it stops above. The issue of open and obvious is different every time the elevator stops. I believe Justice Victory’s analysis on this issue is more persuasive. He opines:
The majority finds that the condition was not open and obvious “as the defect was not readily apparent to all who encountered it,” evidently because the record reflected other “instances of State employees either tripping or falling on the elevators after failing to notice they were misaligned.” Op. at 19. However, not only is the test whether the defect should be obvious to all, but it is the complained-of condition, i.e., the offset in the elevator floor in this elevator, which should be obvious to all, not other conditions in which other elevators were misaligned with the floor. Here, this condition, i.e., the 1 ½ — 3 inch offset where this elevator floor was elevated above the lobby floor, should have been obvious to all. Indeed, the woman who entered the elevator before the plaintiff testified that she noticed it and it was *751 certainly obvious to this plaintiff. Whether other people failed to notice other conditions wherein elevators in the building failed to properly align with the floor is simply immaterial.
Broussard, 2012-1238, 113 So.3d at 195 (Victory, J., dissenting).
Justice Guidry also points out that the “reports of other [prior] elevator malfunctions ... goes to whether the State had knowledge of the elevator’s improper working order, not whether this particular condition presented an unreasonable risk of harm.” Broussard, 2012-1238, 113 So.3d at 196 (Guidry, J. dissenting).
| fiIn choosing a malfunctioning elevator to attempt to reconcile the inconsistent jurisprudence, I believe the court has only increased the uncertainty in this area. A case involving a broken sidewalk, a drop off on the shoulder of a road, a broken stairway, or broken bleachers is the type of case that lends itself more to the result intended by the supreme court. Unlike an elevator, these cases involve a condition that does not change from minute to minute or even from day to day. They lend themselves readily to a query of whether the defect is “open and obvious” to all and whether a plaintiff should, therefore, have seen it. Since the supreme court has adopted the “breach of a duty” query for the fact-finder, it would seem that it would be more readily applied with these types of defective conditions that do not change from minute to minute.
Not all imperfections are defects and not all defects present an unreasonable risk of harm. The majority finds the puddle of standing water on the sidewalk to be a defect. I do not believe standing water on a sidewalk in south Louisiana constitutes a defective condition. And such a condition certainly does not present an unreasonable risk of harm. If so, then there are thousands of such risks after the many rains that occur regularly in Louisiana.
However, the particular facts of this case present a unique situation. The pooling water on this sidewalk might not present a defective condition to anyone or everyone who encounters it. But the condition had existed for some extended time and the defendant had even repaired an eight foot section of the sidewalk. This would indicate a recognition that the condition presented a defect and perhaps even a risk of harm. The defendant suggests that they repaired the defective condition and it no longer exists. However, the plaintiff suggests that the original defective condition involved a sixteen foot section of the sidewalk and the defendant only repaired an eight foot section. This is certainly a genuine issue of material fact which would make the case improper for summary judgment.
17For these reasons, I concur only in the result reached by the majority and would also reverse the judgment of the trial court.

. Pryor v. Iberia Parish School Board, 10-1683 (La.3/15/11), 60 So.3d 594 (per curiam), where the plaintiff injured herself while descending from some metal bleachers. The bleachers had wood planks for sears that doubled as steps. The alleged defective condition was an 18 inch gap between the first and second row. In ascending the bleachers, the plaintiff sat down and swung one leg at a time across the gap. So, she was well aware of the condition. Finding that the bleachers were not unreasonably dangerous, the supreme court affirmed the decision of the district court. It is not totally clear, but it seems the court that there was no duty owed rather than a breach of the duty.
Dauzat v. Curnest Guillot Logging Inc., 08-0528 (La.12/02/08), 995 So.2d 1184, in which an experienced logging truck driver injured himself when driving an 18-wheel logging truck into a pothole on a logging road. He claimed he did not see the hole, but was well aware of the general condition of logging roads and the propensity for such holes. The court found there was no breach of the duty. However, there are some interesting aspects of the court’s decision, particularly whether the road condition was obvious to all or only to experienced logging truck drivers.
Eisenhardt v. Snook, 08-1287 (La.3/17/09), 8 So.3d 541 (per curium), wherein the plaintiff slipped on some garbage residue that had been spilled on the steps of his girlfriend's apartment where he lived. After a trial, the court found in favor of the defendant, but it is unclear whether the finding was that no duty was owed or that there was a breach of the duty. The appellate court reversed in part and affirmed in part and allocated fault to each party. The supreme court reversed the court of appeal, but rather than straighten out: the matter, they seem to have denied recovery to the plaintiff because of what he should have known rather than what he actually knew or, more importantly, what would have been obvious to everyone.
Pitre v. Louisiana Tech Univ., 95-1466 (La.5/10/96), 673 So.2d 585. in which a college student used a garbage can lid as a sled to slide down a slope into a campus parking lot after an ice and snow storm. He and three other students laid on their backs facing downhill and were pushed to begin the descent. The lid impacted the concrete base of a light pole and the student was paralyzed. The court found there was no duty owed because of the obvious and apparent danger of sliding down the hill into a light pole. Murray v. Ramada Inns, Inc., 521 So.2d 1123 (La.1988), in which a young man dove into the marked shallow end of a motel swimming pool. He was aware of the dangers of diving into shallow water. He was paralyzed from hitting his head and eventually died from these injuries. The court found that a duty was owed, even though the risk was apparent and obvious to the plaintiff.

. Broussard, 2012-1238, 113 So.3d at 190, n. 9.

. Frank L. Maraist, H. Alston Johnson III, Thomas C. Galligan, Jr., & William R. Cor-bett, Answering a Fool According to His Folly: Ruminations on Comparative Fault Thirty Years On, 70 La. L. Rev. 1105, 1127 (2011).

. Broussard, 2012-1238, 113 So.3d at 190, n. 9.