212 So.2d 158 (1968)
Mrs. Althea HYLAND, on behalf of minor, Bernard F. Hyland, III,
v.
Raymond L. DURR, d/b/a Ray's Skating Rink.
No. 2110.
Court of Appeal of Louisiana, Fourth Circuit.
June 10, 1968.
Rehearing Denied July 1, 1968.
J. Stuart Douglass and Michael O. Miranne, New Orleans, for plaintiff-appellee.
Dufour, Levy, Marx & Lucas, Leonard B. Levy and James D. McGovern, Jr., New Orleans, for defendants-appellants.
Before SAMUEL, HALL and JOHNSON, JJ.
HALL, Judge.
Plaintiff's minor son, Bernard F. Hyland, III, sustained a fractured leg as the result of an accident when he fell while attempting to skate at a skating rink owned by Raymond L. Durr. The accident occurred on March 22, 1958.
On March 19, 1959 plaintiff filed this suit "as administrator of the estate of her minor child and as the natural tutrix of her minor child" against Raymond L. Durr for damages for and on behalf of her minor son in the sum of $6,310.00, alleging that the accident was due to negligence on the part of the owner of the skating rink.
On March 13, 1961 defendant, Durr, filed an answer to plaintiff's petition coupled with a third party demand against (1) Maily David, d/b/a Maily David Insurance Agency, (2) Godchaux & Mayer, Ltd., and (3) "those Foreign Insurers subscribing to contract 3081 as Underwriters for Godchaux & Mayer Ltd. as security for policy no. GM1386." In his third party demand Durr prayed for judgment against the third party defendants in solido in the amount of whatever judgment might be awarded plaintiff against him. The only third party defendant upon whom service was effected was Godchaux & Mayer Ltd.
The case was originally tried on January 16, 1962 and March 1, 1962. On September 27, 1965 the Trial Judge rendered judgment in favor of plaintiff against the *159 defendant, Raymond L. Durr, in the sum of $6,310.00 plus interest and costs and in favor of Raymond L. Durr, third party plaintiff, and against third party defendants, Godchaux & Mayer Ltd., and Maily David, d/b/a Maily David Insurance Agency in solido in a like sum plus interest and costs. (It is noted that Maily David, d/b/a Maily David Insurance Agency was never served and made no appearance at the trial.)
Both Raymond L. Durr and Godchaux & Mayer Ltd. appealed. The record on appeal which was filed in this Court on October 15, 1965 was found to be incomplete in that it contained none of the testimony which was taken at the trial. On the petition of Godchaux & Mayer Ltd. and with the written consent of counsel for all parties this Court entered an order on November 23, 1965 remanding the cause to the Trial Court for completion of the record by inclusion of the transcript of the oral testimony taken at the trial.
Meanwhile the original trial judge had died and the Presiding Judge of the Trial Court entered an order on January 16, 1967 which recited that the record of the trial could not be found and transferred the case to the Honorable H. Charles Gaudin, Judge of Division "G" of the Trial Court for further proceedings in order to make final disposition of the matter.
On October 17th and 19th, 1967 Judge Gaudin reconstituted the record by retaking the testimony of the witnesses who had originally testified in the cause. Judge Gaudin thereupon ordered the testimony transcribed and filed in the record.
The matter is here on the original appeals taken by Raymond L. Durr and Godchaux & Mayer Ltd. from the judgment rendered on September 27, 1965. The testimony before us was taken almost ten years after the accident. The testimony of the witnesses is vague and self-contradictory in many respects and no good purpose would be served in reviewing it in detail.
On the day of the accident plaintiff's twelve year old son, Bernard F. Hyland, III, together with either three or four (the record is contradictory) other friends of about the same age attended a birthday party at the home of thirteen year old Jimmy Davis, Jr. After the party the children were taken by Jimmy's parents, Mr. and Mrs. James Davis, Sr., to Ray's Skating Rink which is or was at the time owned by the defendant, Raymond L. Durr, and operated by his wife. Plaintiff's son did not know how to skate, never having skated before, but went along because the other boys wanted to. On the way to the rink Bernard made known to Mr. and Mrs. Davis and the boys that he had never learned to skate but was urged by the boys to try. Upon arriving at the rink Bernard was still reluctant to put on skates but was finally persuaded to do so. The testimony is conflicting as to whether the skating rink operator took part in the persuasion. At any rate Bernard finally put on skates and entered the rink.
The skating floor is rectangular in shape being forty feet wide and ninety feet long and is entirely surrounded by a hand rail except for an entrance-exit gate which is in the center of the front end. By hanging on to the rail Bernard made his way counter-clockwise around the rink until he reached a point a few feet from the last corner. At that point he released his hold on the rail apparently with the intention of proceeding diagonally across the corner to the exit when his feet slipped out from under him and he fell breaking his right leg just above the ankle and dislocating the ankle.
The evidence is conflicting as to whether the operator, Mrs. Durr, took part in persuading Bernard to skate by telling him she would furnish an instructor to aid him. Mrs. Durr testified that she did not furnish an instructor for him; that she had no instructors on Saturday nights; that she was entirely unaware that Bernard could not skate until she glanced at the *160 rink and saw him alone on the right side of the rink with his arm hooked around the rail and his feet stretched out; that at this time she realized he was a hazard to the other skaters who might trip over him and for his own safety and the safety of the others he had to stay on the rail; that she called Edward Ayola, one of her helpers, and told him to "see that that boy stays on the rail." Mrs. Durr further testified that Edward Ayola was not an instructor but was a seventeen year old youth whom she permitted to skate without charge on condition that he would keep order on the floor. Mrs. Durr's version of the accident is that when Bernard arrived at the last corner of the rink he stood there talking to Mrs. Davis who she testified was seated about two feet from him on the outside of the rail; that he released the rail while talking to Mrs. Davis and his feet slipped out from under him.
Plaintiff's version of the accident is that Mrs. Durr was the one who finally persuaded Bernard to skate by furnishing an instructor for him and telling him the instructor would see that he did not get hurt; that this instructor entered the rink with Bernard and stayed with him the entire time until Bernard fell; that Bernard went around the rink with one hand on the rail and the other held by the instructor; that when they arrived at a point a few feet from the last corner the instructor persuaded Bernard to try to skate alone cater-corner to the exit. We find no reason to discuss all of this testimony in detail. Since it was taken ten years after the accident it is understandably vague as to some details and is replete with contradictions and self-contradictions.
We shall however note Bernard's testimony and that of Gavin Cachere relative to the accident itself.
Bernard testified that he recalled the accident vividly. After testifying that Mrs. Durr persuaded him to skate and furnished an instructor or assistant instructor who entered the rink with him, he testified in part as follows:
"* * * as I started into the rink he was there and I held onto the rail and proceeded to go around and with not very good success and I don't know whether he was holding me but he was there at my side * * * and we proceeded around * * * I said once I got back that was going to be it for me because I felt foolish * * * we were just about to * * * make the complete revolution, there was a cater-corner, I believe, it was a rectangular rinkI don't believe it was circular, and to go cater-corner across a corner on my ownhe encouraged me to try before I quit therefore he said you might be able to make it you may be able to go on, don't just give up * * * he egged me on and I agreed and I proceeded out and how far I got I don't really know because I * * * fell * * *"
Bernard further testified that he was five to ten feet from the corner when he started for the exit and that he got perhaps half way when he fell.
Gavin Cachere was one of the boys who accompanied plaintiff's son to the rink. He could not skate very well himself so he also went around the rink holding to the rail. He testified that he was about three feet behind Bernard and the "instructor" when the accident happened and that he overheard the conversation between them; that the instructor "urged him to try and go ahead to make it to the exit on his own;" that Bernard said he did not want to try but the instructor told him that "he would be there to give him help, I guess that is what you would call it, help or guidance to make sure he would not fall." Although Cachere was positive he overheard the conversation over the noise of the rink he could not say whether the instructor was behind or beside Bernard at the time, and, like the other witnesses, was naturally rather hazy as to the other happenings *161 that night and contradicted the other witnesses in several respects.
It is noted that Cachere's testimony goes beyond that of Bernard himself. Bernard simply said that "he encouraged me to try before I quit."
Edward Ayola, the so called "instructor" did not testify at the first trial because he was in the military service at that time. Although Ayola was present in Court at the hearing before Judge Gaudin plaintiff's counsel refused to permit him to testify under the "ground rules" which limited the witnesses to those who had testified at the first trial.
It is well settled that the owner or operator of a place of public amusement is not an insurer of the safety of its patrons but is liable for injuries received by them only if guilty of negligence. It is equally well settled that one who participates in a sport assumes the ordinary risks attendant upon such participation.
Even if we view the testimony in a light most favorable to plaintiff we are unable to find any negligence on the part of the defendant. It is clear that young Bernard Hyland's fall was not due to any defect in the skating rink nor was it due to any affirmative act on the part of defendant. Although, according to plaintiff's version, Ayola encouraged or even urged Bernard to try to skate the few feet to the exit alone we do not consider that an act of negligence on the part of an instructor, if such he was. How else would a pupil ever learn to skate? Bernard was under no compulsion to leave the rail. He could have held to the rail until he reached the exit or he could have stopped in the corner, out of the way of the skaters, and taken his skates off. Instead he left the rail of his own accord well knowing and assuming the risk of falling.
For the foregoing reasons the judgment appealed from is reversed and judgment is now rendered in favor of the defendant and against the plaintiff rejecting said plaintiff's demands and dismissing her suit at her cost, and further judgment is now rendered dismissing the third party petition of Raymond L. Durr; all costs of this appeal to be borne by plaintiff-appellee.
Reversed and rendered.