451 So.2d 1231 (1984)
Cassandra DOBARD
v.
SKATE COUNTRY, INC. and Empire Fire & Marine Insurance Company.
No. CA-1659.
Court of Appeal of Louisiana, Fourth Circuit.
June 6, 1984.
*1232 Louis A. Gerdes, Jr., New Orleans, for appellee.
Bernard, Cassisa, Babst & Saporito, Robert A. McMahon, Jr., Joseph S. Palermo, Jr., Metairie, for appellant.
Before GULOTTA, BARRY and WILLIAMS, JJ.
GULOTTA, Judge.
Defendant Skate Country, Inc. and its insurer appeal from a $37,600.00 jury award in favor of a plaintiff for injuries sustained in a fall while roller skating. Both liability and quantum are at issue. We affirm.
Plaintiff, Cassandra Dobard, fractured her left forearm in a fall caused by two horseplaying skaters who collided in proximity to her as she was skating at defendant's rink. The jury unanimously found that plaintiff had not knowingly and voluntarily assumed the risk of her injury, and that the defendant rink or its employees had been entirely at fault.
Appealing, defendants contend the jury abused its discretion in finding them negligent. According to defendants, their efforts in controlling the offending skaters were reasonable under the circumstances, and the skaters' "sudden and precipitous" behavior causing plaintiff's fall was totally unexpected and unavoidable. Alternatively, they contend the jury award is excessive. Defendants lastly claim evidentiary error was committed by the trial judge when he allowed introduction of plaintiff's medical bills without a proper foundation.

LIABILITY
Plaintiff testified that she had noticed two teenaged boys "weaving in" through the skating traffic and "trying to catch each other" for about an hour before the accident. She heard the boys warned over a loudspeaker by a rink employee to stop or be expelled from the floor. However, she did not recall seeing them leave the rink before they collided and caused her fall.
Plaintiff's version of the incident was substantially corroborated by the testimony of her skating companions. Brenda Collins had seen the two boys skating "real fast", "cutting in front", and "clowning" for thirty to forty-five minutes before plaintiff's fall. She did not recall any warnings by rink employees.
Similarly, Deborah Davis, one of plaintiff's skating companions, testified that the wildly skating boys had almost hit her, and that she had complained to the rink "referee". Davis did not remember any reprimand or expulsion of the boys by defendant's employees.
Plaintiff's third friend, Ava Saunders, had also observed a "wild skater" who almost knocked her down. Saunders asked a rink employee to remove the boy from the floor, but he merely asked the offending skater over the loud speaker to slow down and identified him by name. When she did not observe the skater desist, Saunders removed herself from the floor out of fear for her own safety.
*1233 In contrast to plaintiff's version, Jose Santana, floor guard of the rink on the night of the accident, testified that he had removed the wild skaters from the floor for a twenty minute period prior to the accident.
According to Santana, when the teenaged boys failed to heed his initial warning in response to a patron's complaint about their skating, and continued "playing tag, weaving in and out and more or less trying to push each other down", he ordered them to leave the floor. Twenty minutes later, after they promised to skate properly, he allowed them to skate again, in accordance with his normal procedure in handling unruly skaters. Santana testified that the boys had only been on the floor about 30 seconds when the accident happened. Although the young men had a history of being disciplined on earlier occasions, they were not listed in defendant's index of regular patrons with serious disciplinary problems.
It is well settled that an operator of an amusement facility, though not an insurer of a patron's safety, is liable for its negligence. Hills v. Skate Country East, Inc., 430 So.2d 1035 (La.App. 4th Cir.1983); Hyland v. Durr, 212 So.2d 158 (La.App. 4th Cir.1968). It is also true that some bumping or jostling is an ordinary risk of participation in roller skating. Hills v. Skate Country East, Inc., supra; Katz v. Insurance Company of North America, 150 So.2d 879 (La.App. 4th Cir.1963), writ refused 244 La. 476, 152 So.2d 565 (1963). Nonetheless, a patron of a skating rink only assumes the ordinary risks of a recreational activity, and may reasonably conclude that the danger presented by wildly skating fellow patrons is within the control of floor guards of the skating rink who have a duty to prevent such behavior. Phillips v. Skate Country East, 420 So.2d 730 (La.App. 4th Cir.1982), writ denied 423 So.2d 1162 (La.1982).
The facts of the instant case are similar to those in Phillips v. Skate Country East, supra, where we held a skating rink liable to a plaintiff injured in a fall caused by two wildly skating young boys who had collided in front of her. In Phillips, the offending skaters had skated past plaintiff before the accident without any restraint by the rink's employees. We concluded in Phillips that the danger created by the offensive skating was within the control of the floor guards, and that the plaintiff had not assumed the risk of her injury.
In the instant case, as in Phillips, the testimony of plaintiff and her witnesses establishes that the offending youths had skated wildly for some time prior to the accident, posing a danger to plaintiff and other patrons. Although defendant's floor manager testified that he had removed the two young men from the floor for twenty minutes prior to plaintiff's injury, plaintiff's witnesses recalled only oral warnings that were disregarded.
Under these circumstances, we find no error in the jury's conclusions that plaintiff was free from fault, that plaintiff had not knowingly and voluntarily assumed the risk of injury, and that defendant was negligent by breaching its duty to supervise more closely the horseplaying skaters to prevent this accident.
In so holding, we distinguish Hills v. Skate Country East, Inc., 430 So.2d 1035 (La.App. 4th Cir.1983), relied on by defendants. In Hills, the defendant rink was exonerated from liability to a plaintiff bumped by an unidentified skating couple who had "dashed" onto the floor from a snack bar area. The evidence in Hills indicated that the rowdiness of the unidentified couple 30 minutes before the accident was not connected in time or place with the injury, and that they had not engaged in any conduct immediately prior to the accident to place a duty on the operator to take action against them. We noted in Hills that the couple's "sudden and precipitous conduct" was the "antithesis of the ongoing, observable misconduct which supports liability to a patron who is bumped and falls."
In the instant case, unlike Hills, the evidence supports the jury's finding, based on *1234 credibility, that the offending skaters' misconduct was ongoing for quite some time prior to plaintiff's injury, rather than sudden and unexpected. A reasonable conclusion can be reached that the jury believed plaintiff's version of the ongoing wild behavior of the offending skaters.

QUANTUM
Turning now to the issue of quantum, we further find no error in the jury's lump sum award of $37,600.00.[1]
Plaintiff sustained a comminuted fracture of the ulnar bone of her left forearm. On the day of the February 2, 1981 accident, her arm was X-rayed and immobilized in a cast. She was seen by Thomas Duncan, M.D., an orthopedic surgeon, on February 6, 1981, who recommended an operation to realign displacement of the fracture site.
On February 10, while plaintiff was under general anesthesia, Dr. Duncan realigned the fragments, and positioned and stabilized the bone by drilling four holes in it and bracing it with a plate and screws. Plaintiff's arm was then placed in a plaster cast extending from below her armpit to her hand.
After the cast was removed nearly four months later on June 4, 1981, plaintiff continued to wear her arm in a sling during the second phase of treatment, which included exercises and soaking of the arm in hot water. Dobard was last seen by Dr. Duncan on October 1, 1981, after prior follow-up visits on February 26, March 12, April 9, May 7, June 4, and June 25.
Dr. Duncan testified that the surgery was successful, and he did not feel that plaintiff had any significant impairment of function of the extremity. He assessed her residual disability as 1% of the entire left arm, and testified that plaintiff can resume all her regular sports and work activities.
The 22 year old unmarried plaintiff testified at length concerning her post-injury recovery. She stated that the cast interfered with her normal activity and curtailed her social activities. She encountered problems dressing and eating, and had to buy a new wardrobe. She also experienced considerable pain during therapy.
At the time of trial, she did not have "full confidence" in her arm, and refrained from her strenuous pre-accident activities such as lifting heavy objects and gymnastics. The plate and screws, discernable under plaintiff's skin in the left arm, were viewed by the jury.
The record establishes that plaintiff has experienced prolonged pain and inconvenience as a result of the fracture of her arm. The evidence considered, we cannot say the $37,600.00 total damage award constitutes an abuse of the jury's much discretion. See Reck v. Stevens, 373 So.2d 498 (La. 1979); Coco v. Winston Industries, Inc., 341 So.2d 332 (La.1976).
In so holding, we reject defendant's argument that the amount of the judgment should be reduced by the sum of $1,998.95, representing the total of medical bills admitted into evidence. According to defendants, the documents were inadmissible because they lacked any independent verification as to their authenticity or reasonableness by proper medical personnel.
The medical bills were introduced after being identified by plaintiff as charges incurred because of her injury. Plaintiff's testimony and that of her treating physician, concerning the nature of her treatment, establishes an adequate foundation for the introduction of these documents. Moreover, the trial record contains a complete copy of plaintiff's medical record including a signed statement of a medical records official certifying that the attached record is true and accurate. Under these circumstances, we find no error in the introduction *1235 of the bills and charges corresponding to this medical treatment.
Having so concluded, we affirm the judgment of the trial court.
AFFIRMED.
NOTES
[1] Plaintiff introduced into evidence, over defendant's objection, medical bills totaling $1,998.95. Plaintiff's lost wages amounted to $604.89, based on a stipulation at trial that she earned $67.21 per day as a school teacher and had missed nine working days as a result of the accident. If these amounts are attributed to special damages, the jury's lump sum verdict would include $35,000.00 in general damages.