552 So.2d 732 (1989)
William J. LAMBERT & Warren J. Lambert
v.
WHEELS "R" ROLLING SKATE CENTER, INC. and Its Insurer, ABC Insurance Company.
No. CA 88 1467.
Court of Appeal of Louisiana, First Circuit.
November 14, 1989.
Writ Denied January 19, 1990.
*733 Paul G. Aucoin, Vacherie, for plaintiff and appellant, William J. Lambert.
Paul V. Cassisa, Jr., Metairie, for defendant and appellee-Wheels "R" Rolling.
Before CARTER, SAVOIE and ALFORD, JJ.
ALFORD, Judge.
The plaintiffs, William J. Lambert and his father, Warren Lambert, appeal the trial court's judgment rendered in favor of the defendants, Wheels "R" Rolling Skate Center, Inc. and an unnamed insurance company, wherein the court found no negligence on the skating rink's part and dismissed the Lamberts' tort suit with prejudice.

FACTUAL BACKGROUND
While skating at the defendant's rink at approximately 8:00 p.m. on January 17, 1986, William Lambert allegedly fell backwards on his left arm and sustained an open compound fracture of both bones of his left forearm. At the time of the incident, Lambert, who was 21 years old and an experienced skater, had been skating for about three minutes when he was suddenly clipped from the rear by a young, unknown skater. Lambert was skating at the rink with his date, Margaret Percle; a friend, Steven Oubre; and Steven's date, Rachel Landry. The young women did not witness the alleged accident, and neither Lambert nor Oubre could identify the "mystery skater". Oubre testified that the skater, whom he identified as a boy who looked a little younger than 13 years old, went through the middle of the rink, hit Lambert from behind, and kept on going. Oubre stated that the whole incident was over in three or four seconds. Lambert was immediately helped up and to the side by another unknown boy, identified only as being a "young guy about 13 years old". Oubre obtained a bag of ice from a man behind the skate counter for Lambert's arm; all four removed and returned their skates; and Oubre and the young women took Lambert to Thibodaux General Hospital for treatment.
At the time of the alleged incident, there were approximately 150 to 175 people skating, out of 208 paid patrons in the facility. The Roller Skating Rink Safety Standards developed by the RSROA (a national organization of roller skate rinks) were admitted into evidence. These standards recommend one floor guard for approximately every 200 skaters and state that the floor guards must be identifiable by their attire. According to the rink manager and the business records admitted into evidence, there was one paid floor guard on duty, wearing a gold tee shirt with the rink's logo on the front and the words "FLOOR GUARD" in two-inch black letters on the *734 back. Additionally, there was a disc jockey who was also charged with watching the floor in order to help supervise floor activities. The manager also testified that there was probably a volunteer floor guard skating that night. Lambert, Percle, Oubre and Landry all testified that they did not observe any floor guards during the few minutes they were on the floor. The paid floor guard and the rink manager testified; neither recalled the alleged incident.

PROCEDURAL HISTORY
Plaintiffs filed suit on July 28, 1986. Named as defendants were the skating rink and its unnamed insurance carrier. The petition was never amended to name a specific carrier and the only defendant to answer was the rink. A bench trial on the merits was held on March 3, 1988, and the judgment was rendered and signed on May 10, 1988, dismissing plaintiffs' suit against the defendants with prejudice. The court based its judgment on Reasons for Judgment signed on April 28, 1988.
The Lamberts then perfected this appeal contending the trial court erred (1) by misapplying the applicable jurisprudence with respect to the proper standard to be used for determining whether the defendant breached its duty to plaintiff, (2) by finding no causal relationship between the lack of additional floor guards and the improper conduct of the offending skater and (3) by not allowing one of plaintiff's expert witnesses to testify.

DISCUSSION
It is well settled jurisprudentially that the operator of an amusement facility is not an insurer of the safety of the patrons but is liable for injuries received by them only if he is guilty of negligence. Heard v. Bonnie and Clyde's of Hattiesburg, Inc., 501 So.2d 1003 (La.App. 2d Cir.), writ denied, 503 So.2d 481 (La.1987); Hills v. Skate Country East, Inc., 430 So.2d 1035 (La.App. 4th Cir.), writ denied, 438 So.2d 568 (La.1983). Prior jurisprudence also held that one who participates in a sport or recreational activity assumes the ordinary risks attendant upon such participation. Heard, 501 So.2d at 1007; Dobard v. Skate Country, Inc., 451 So.2d 1231 (La.App. 4th Cir.1984); Hills, 430 So.2d at 1037. However, in light of Murray v. Ramada Inns, Inc., 521 So.2d 1123 (La.1988), the use of the terminology "assumption of the risk" in recreational activity and sports cases has been abandoned, although the end result is still the same. Under the reasoning set out in Murray, the duty/risk analysis must be applied to these situations. While rink operators must provide skaters with a reasonably safe area in which to skate, they either owe no duty or have not breached their duty to a participant by failure to protect him or her from reasonable risks ordinarily attendant upon such participation. 521 So.2d at 1129, 1134. For example, some bumping or jostling is an ordinary risk of participation in roller skating. Dobard, 451 So.2d at 1233; Hills, 430 So.2d at 1037. Therefore, the defendant in Hills did not breach its duty to provide skaters with a reasonably safe place to skate when the plaintiff was injured by skaters who suddenly and without warning dashed onto the floor, causing her to fall and injure herself. On the other hand, the defendant in Dobard did breach its duty by failing to prevent the prolonged, observable misconduct of wildly skating patrons which caused plaintiff's injuries.
In reviewing the facts of the instant case and the reasons for judgment, we find that the trial court correctly expressed and applied the proper standard. The trial court stated:
The law is clear that the operator of an amusement facility is not an insurer of the safety of the patrons but is liable for injuries received by them only if the operator is guilty of negligence. The burden of proof is on the Plaintiff to show the Defendants' negligence and that an accident occurred as a result of this negligence.
A factual determination by a trial court will not be set aside unless manifestly erroneous. Arceneaux v. Domingue, 365 So.2d 1330 (La.1978). The court's determination that the rink owners did not commit "any *735 negligent act by allowing over 200 patrons into the rink" is not clearly wrong, since there was ample evidence in the record to demonstrate that this particular rink often accommodated over 200 patrons and that a large number of these patrons were not skating at the time but were occupied in other activities.
Additionally, we find that the judge committed no error in determining that there was no causal relationship between the lack of additional guards and the improper conduct of the offending skater. The facts in this case more closely approximate those of Hills rather than Dobard. There was no contention by plaintiffs that the mystery skater or any other skaters had been engaging in extended horseplay or wildly skating for even a few minutes. Rather, the sole eyewitness, Oubre, stated that he first noted the skater when the boy cut across the middle of the rink and hit Lambert, an incident which only took three or four seconds. While the testimony at trial was disputed as to the number of floor guards, if any, on the floor on this particular night, we agree with the trial court's conclusion that the "the number of floor guards working on the night of the accident is really of little consequence because no matter how many guards were there, they could not necessarily have prevented the accident" since this isolated incident occurred with no forewarning and was over in a matter of seconds. Thus, it is evident that the judge used the appropriate duty/risk analysis and found no causation present in the instant case.
Plaintiffs also contend that the trial court erred in refusing to allow their expert witness in vocational rehabilitation, who was not shown on the witness list, to testify. However, since we have upheld the trial court's determination that there was no negligence on the part of the defendants' rink, we need not address this assignment of error.

CONCLUSION
For the foregoing reasons, we affirm the judgment of the trial court in its entirety. All costs of this appeal are to be borne by the appellants.
AFFIRMED.