958 So.2d 66 (2007)
Mirna IRULA
v.
Bob JEAN Doing Business as Airline Skate Center and ABC Insurance Company.
No. 06-CA-927.
Court of Appeal of Louisiana, Fifth Circuit.
April 24, 2007.
*67 Harold J. Lamy, Barker, Boudreax, Lamy & Foley, New Orleans, Louisiana, for Plaintiff/Appellant.
Lambert J. Hassinger, Jr., Galloway, Johnson, Tompkins, Burr & Smith, New Orleans, Louisiana, for Defendants/Appellees.
Panel composed of Judges THOMAS F. DALEY, MARION F. EDWARDS, and CLARENCE E. McMANUS.
MARION F. EDWARDS, Judge.
In this personal injury action, the plaintiff/appellant appeals a motion for summary judgment granted in favor of defendants/appellees. For the reasons that follow, we reverse.
On April 28, 2004, plaintiff, Mirna Irula ("Irula"), filed the instant suit in the Twenty-Fourth Judicial District Court for the Parish of Jefferson against defendants, Bob Jean ("Jean") d/b/a/ Airline Skate Center and his insurer, alleging that they were liable for a fracture to Irula's left ankle sustained at the Airline Skate Center facility ("Airline"). Airline thereafter filed a Motion for Summary Judgment, which the trial court granted on June 29, 2005 following a hearing on June 22, 2005.
Irula timely filed the present appeal.
On appeal, Irula's sole assignment of error is that the trial court erred in granting summary judgment in light of which she contends is deposition testimony that creates a genuine issue of material fact.
Appellate courts review summary judgments de novo under the same criteria that govern the district court's consideration of whether summary judgment is appropriate.[1] An appellate court must ask the same questions as does the trial court in determining whether summary judgment is appropriate: whether there is a genuine issue of material fact remaining to be decided, and whether the appellant is entitled to judgment as a matter of law.[2] The appellate court must consider whether the summary judgment is appropriate under the circumstances of the case.[3] There must be a "genuine" or "triable" issue on which reasonable persons could disagree.[4] Under the amended version of LSA-C.C.P. art. 966, the burden of proof remains on the mover to show "that there is no genuine issue as to material fact and that the mover is entitled to judgment as a matter of law." A material fact is one that would matter on the trial of the merits.[5]
In the present case, the record before us shows that Irula was a patron at Airline in Metairie on August 23, 2003 for the purpose of attending a birthday party. In her deposition, Irula testified that a boy, approximately *68 15 or 16 years old, bumped into her on the skating floor and knocked her down. Irula said that she had seen the boy approximately two or three times previously on that date while he was skating on the carpeted area on the side of the rink. She does not know if the boy ran into her on purpose because the incident happened so quickly. She claimed that she believed that Airline was at fault for allowing people to enter the rink too fast from the carpeted area. Irula stated that Jose Villata ("Villata") complained to Airline employees about a lack of control over how patrons were skating at the rink.
The record also contains the deposition testimony of Villata, who indicated that he saw a boy come from the carpeted area and bump into Irula on the skating rink. Villata described the boy as "a black person, approximately 72 to 73 inches tall." Villata said that he had seen the boy before he bumped into Irula, describing him as "crazy," "going in and out" along with "a lot of other people." He also indicated that the boy had run into him one time earlier in the day. Villata said that he complained to employees of Airline about the way that more than one of the other patrons was skating dangerously, not just the one boy in particular. He believes that he made a total of three or four complaints to Airline personnel in a booth above the rink, in the refreshment stand, and to someone working at the door. Villata said that the nature of his complaints was about a lack of security on the skating floor. He also said that he notified rink floor guards of what he thought was dangerous behavior; however, he testified that he did not specifically point out the boy who bumped into Irula.
The deposition testimony of Mario Fuentes ("Fuentes") was also made part of the record. Fuentes testified that he saw a young man, 15 to 17 years old, go in from the portion of the carpeted area at a fast velocity and knock someone over. Fuentes stated that he had seen the boy four or five times previously but that the boy was not doing anything that Fuentes thought was inappropriate. Fuentes said that he heard Villata complain that the Airline employees were not "having a lot of control over some of the young people," but that at least one employee ignored Villata.
Airline's Safety Survey was also in evidence. The report indicated that Irula said at the time of the accident, "I was skating and a small child cut in front of me causing me to lose my balance and fall forward." The report also indicated that there were approximately 50 skaters on the skating floor at the time of the accident and two floor guards. In an affidavit from defendant Jean, Jean indicates that the "industry standards" for skating rinks recommend that there be one floor guard on duty for every 200 skaters.
In Lambert v. Wheels "R" Rolling Skate Center, Inc.,[6] the First Circuit set forth the following analysis in a similar case, which we find illustrative:
It is well settled jurisprudentially that the operator of an amusement facility is not an insurer of the safety of the patrons but is liable for injuries received by them only if he is guilty of negligence. Heard v. Bonnie and Clyde's of Hattiesburg, Inc., 501 So.2d 1003(La.App. 2d Cir.), writ denied, 503 So.2d 481 (La.1987); Hills v. Skate Country East, Inc., 430 So.2d 1035 (La. App. 4th Cir. [1983]), writ denied, 438 So.2d 568 (La.1983). Prior jurisprudence also held that one who participates in a sport or recreational activity assumes the ordinary risks attendant *69 upon such participation. Heard, 501 So.2d at 1007; Dobard v. Skate Country, Inc., 451 So.2d 1231 (La.App. 4th Cir. 1984); Hills, 430 So.2d at 1037. However, in light of Murray v. Ramada Inns, Inc., 521 So.2d 1123 (La.1988), the use of the terminology "assumption of the risk" in recreational activity and sports cases has been abandoned, although the end result is still the same. Under the reasoning set out in Murray, the duty/risk analysis must be applied to these situations. While rink operators must provide skaters with a reasonably safe area in which to skate, they either owe no duty or have not breached their duty to a participant by failure to protect him or her from reasonable risks ordinarily attendant upon such participation. 521 So.2d at 1129, 1134. For example, some bumping or jostling is an ordinary risk of participation in roller skating. Dobard, 451 So.2d at 1233; Hills, 430 So.2d at 1037. Therefore, the defendant in Hills did not breach its duty to provide skaters with a reasonably safe place to skate when the plaintiff was injured by skaters who suddenly and without warning dashed onto the floor, causing her to fall and injure herself. On the other hand, the defendant in Dobard did breach its duty by failing to prevent the prolonged, observable misconduct of wildly skating patrons which caused plaintiffs injuries.
In the present case, Airline argues that Irula's allegations closely match those considered and rejected by the court in Hills v. Skate Country East, Inc.[7] Specifically, Airline relies on the court's holding in Hills to defeat Irula's contention that it was negligent in not posting guards at every entrance to the skating floor.
Conversely, Irula argues that this case more closely resembles the facts considered by the court in Phillips v. Skate Country East[8] in which the Fourth Circuit held that a skating rink was liable for injuries sustained by a patron who was injured by fellow skaters, who had been previously seen by plaintiff speeding and weaving around the other skaters, and whose behavior was within the control of the floor guards whose duty it was to prevent such practices. In response to this argument, Airline contends that, even if the child in question had misbehaved prior to plaintiff's fall, there is no cause-in-fact between that conduct and the plaintiff's fall. Airline further argues "there is no evidence that the small child was engaged in any conduct immediately prior to the accident so as to place a duty on the operator to take action against him."
Louisiana courts have also found, however, liability on the part of a rink operator who failed to take action against a skater whose reckless behavior was observed over a longer period of time. In Dobard v. Skate Country, Inc.,[9] the court, in affirming a jury verdict against a rink operator, reasoned:
In the instant case, as in Phillips, the testimony of plaintiff and her witnesses establishes that the offending youths had skated wildly for some time prior to the accident, posing a danger to plaintiff and other patrons. Although defendant's floor manager testified that he had removed the two young men from the floor for twenty minutes prior to plaintiff's injury, plaintiffs witnesses *70 recalled only oral warnings that were disregarded.
Under these circumstances, we find no error in the jury's conclusions that plaintiff was free from fault, that plaintiff had not knowingly and voluntarily assumed the risk of injury, and that defendant was negligent by breaching its duty to supervise more closely the horseplaying skaters to prevent this accident.
In so holding, we distinguish Hills v. Skate Country East, Inc., 430 So.2d 1035 (La.App. 4th Cir.1983), relied on by defendants. In Hills, the defendant rink was exonerated from liability to a plaintiff bumped by an unidentified skating couple who had "dashed" onto the floor from a snack bar area. The evidence in Hills indicated that the rowdiness of the unidentified couple 30 minutes before the accident was not connected in time or place with the injury, and that they had not engaged in any conduct immediately prior to the accident to place a duty on the operator to take action against them. We noted in Hills that the couple's "sudden and precipitous conduct" was the "antithesis of the ongoing, observable misconduct which supports liability to a patron who is bumped and falls."
In the instant case, unlike Hills, the evidence supports the jury's finding, based on credibility, that the offending skaters' misconduct was ongoing for quite some time prior to plaintiff's injury, rather than sudden and unexpected. A reasonable conclusion can be reached that the jury believed plaintiffs version of the ongoing wild behavior of the offending skaters.
In the present case, the record contains testimony from Villata that the individual who bumped in Irula had been observed skating wildly earlier in the evening and had, in fact, also bumped into Villata. Villata also testified that he made repeated attempts to notify the management at Airline of behavior that he believed would pose a danger to other patrons. The deposition testimony of Fuentes indicated that at least one of Villata's attempts to notify the management of Airline went unheeded. We find that this evidence creates a genuine issue of material fact regarding Airline's liability for Irula's injury sufficient to defeat summary judgment.
Accordingly, for the foregoing reasons, the judgment of the trial court is reversed.
REVERSED.
NOTES
[1] Bua v. Dressel, 96-79 (La.App. 5 Cir. 5/28/96), 675 So.2d 1191, writ denied, 96-1598 (La.9/27/96), 679 So.2d 1348 (citing Reynolds v. Select Properties, Ltd., 93-1480 (La.4/11/94), 634 So.2d 1180).
[2] Tassin v. City of Westwego, 95-307 (La.App. 5 Cir. 12/13/95), 665 So.2d 1272.
[3] Rowley v. Loupe, 96-918 (La.App. 5 Cir. 4/9/97), 694 So.2d 1006.
[4] Id. at 1008.
[5] J.W. Rombach, Inc. v. Parish of Jefferson, 95-829 (La.App. 5 Cir. 2/14/96), 670 So.2d 1305.
[6] 552 So.2d 732, 734 (La.App. 1 Cir.1989), writ denied, 556 So.2d 1265 (La.1990).
[7] 430 So.2d 1035 (La.App. 4 Cir.1983), writ denied, 438 So.2d 568 (La.1983).
[8] 420 So.2d 730 (La.App. 4 Cir.1982), writ denied, 423 So.2d 1162 (La.1982).
[9] 451 So.2d 1231, 1233-34 (La.App. 4 Cir. 1984).