Judgment rendered January 12, 2022.
Application for rehearing may be filed
within the delay allowed by Art. 2166,
La. C.C.P.

No. 54,171-CA

COURT OF APPEAL
SECOND CIRCUIT
STATE OF LOUISIANA

* * * * *

CARDENA WATTS,                                  Plaintiff-Appellant
INDIVIDUALLY AND AS
TUTOR OF THE MINOR CHILD,
MARKAIA FOSTER

versus

PARTY CENTRAL FAMILY FUN              Defendant-Appellees
CENTER, T.H.E. INSURANCE
COMPANY AND ABC
MANUFACTURER

* * * * *

Appealed from the
Twenty-Sixth Judicial District Court for the
Parish of Bossier, Louisiana
Trial Court No. 162666

Honorable E. Charles Jacobs, Judge

* * * * *

ERNEST H. GILLIAM, III                          Counsel for Appellant


THOMAS, SOILEAU, JACKSON            Counsel for Appellees
& COLE, LLP
By: Steven E. Soileau

* * * * *

Before MOORE, COX, and ROBINSON, JJ.

**MOORE, C.J.**

Cardenna Watts appeals a summary judgment that dismissed her individual and her minor daughter's personal injury claims against Party Central Family Fun Center and its insurer, T.H.E. Insurance Co. For the reasons expressed, we affirm.

## FACTUAL AND PROCEDURAL HISTORY

On the evening of August 17, 2019, Ms. Watts took her eight-year-old daughter, Markia Foster,[1] to Party Central, an amusement center in Bossier City, for a birthday party. Shortly before closing time, Markia got on a "Rookie Kart" at the go-kart track. She successfully navigated the track several times before ramming headfirst into a side rail. Her kart stopped, jutting perpendicularly into the track. Almost immediately, two other go-karts struck Markia's kart; a few seconds later, a third struck it. An attendant promptly ran onto the track, pulled Markia out of the kart, and carried her to safety. The entire incident was captured on a black-and-white surveillance video.

Ms. Watts declined first aid at the scene and brought Markia home thinking she had a superficial bruise to her jaw. The next day, however, the child complained of abdominal pain so Ms. Watts took her to CHRISTUS Highland Hospital. There, doctors found a broken jaw, a concussion, and a Grade 3 tear of her pancreas. According to the petition, Markia spent 12 days in the hospital and ran up $80,000 in medical expenses.

In July 2020, Ms. Watts filed this suit, individually and on behalf of Markia, against Party Central, its insurer, and the unknown manufacturer of

---

[1] In the original petition, the plaintiff's name is spelled "Cardena" and her daughter's "Markaia," but in all subsequent filings, including her own affidavit, they are spelled "Cardenna" and "Markia."

the go-kart.  She alleged basic tort liability, La. C.C. arts. 2315 and 2316; liability to an onlooker, C.C. art. 2315.6; strict liability, C.C. arts. 2317, 2317.1, and 2322; products liability, La. R.S. 9:2800.54 through 9:2800.60; penalties and attorney fees for bad faith refusal to settle, R.S. 22:1892 and 22:1973; and a request for jury trial.  In subsequent filings, Ms. Watts withdrew her claims for penalties and attorney fees, and established her status as Markia's natural tutrix.

In November 2020, Party Central and its insurer moved for summary judgment.[2]  They conceded that the accident occurred but argued that it was purely the result of the child driving headfirst into a barrier; Ms. Watts had no evidence of negligence or of any defective condition.  In support, they offered the affidavit of Party Central's president, Bernadette Chandler, with 26 attached photos and stills from the surveillance video.  These included a posting of Rookie Kart rules and a warning, "This establishment is not responsible for accidents.  Individuals participating in this activity do so at their own risk."  They also filed portions of Ms. Watts's deposition, in which she admitted that, to her knowledge, the go-karts were not operating in violation of any safety rules or in any improper or wrong way.

Ms. Watts opposed the MSJ, arguing that the track had an "emergency cut-off switch," thus creating the legal issue whether Party Central had a duty to "shut off the ride" if a rider is placed in danger, and the factual issues whether it had enough time to do so and enough employees to keep adequate watch.  In support, she filed a DVD of the surveillance video of the accident,

---

[2] In response to discovery, Party Central identified the maker of the go-kart as Amusement Products, of Chattanooga, Tenn., but the record does not show that Ms. Watts ever amended her claim to name this entity as defendant or effected service on it.

2

a copy of Party Central's answers to interrogatories, Markia's certified hospital records, and Ms. Watts's own affidavit.

Party Central responded that Ms. Watts's opposition was mostly speculation. It also showed that what she called a "cut-off switch" was, according to discovery responses, a "kart commander," which would place all karts in idle but could not stop them. It argued that Ms. Watts had produced no evidence that had it done anything differently, Markia would not have been injured.

## ACTION IN THE TRIAL COURT

At the hearing, in February 2021, counsel for Ms. Watts argued that Party Central "could have stopped the go-karts once [Markia] hit the wall." The court started to ask, and then stated, "Don't those kill switches * * * they don't bring go-karts to an immediate stop. They bring it to a coasting stop." Counsel still maintained, "All they had to do was press the button" and "the impact could have been avoided completely." He concluded, "If the cars had been slown [*sic*] down, there's a possibility that she would not've been injured."

The district court ruled that summary judgment was proper because there was no evidence that the track was improperly staffed or the staff was improperly trained, that Party Central was negligent, or that Markia's injuries arose from the third impact rather than the first. The court later rendered judgment dismissing Ms. Watts's claims against Party Central and its insurer.

Ms. Watts appealed devolutively.

## THE PARTIES' POSITIONS

By her sole assignment of error, Ms. Watts urges that the court erred in finding no genuine issue of material fact as to whether Party Central's failure to use the emergency kill switch on its ride was reasonable and whether such failure could not support Ms. Watts's negligence claim as presented. She argues that summary judgment is "ordinarily not an appropriate procedural device when there are issues that require the determination of the reasonableness of acts and conduct of parties under all the facts and circumstances." *Gauthier v. Foster Homes LLC*, 53,143 (La. App. 2 Cir. 11/20/19), 284 So. 3d 1206; *Mixon v. Davis*, 31,725 (La. App. 2 Cir. 3/31/99), 732 So. 2d 628; *Banks v. State Farm Ins. Co.*, 30,868 (La. App. 2 Cir. 8/19/98), 717 So. 2d 687; *Stroder v. Horowitz*, 34,048 (La. App. 2 Cir. 12/20/00), 775 So. 2d 1175. She particularly stresses one case for the proposition, "Although it generally is inappropriate to resolve negligence cases on summary judgment, an exception has been recognized when there is a categorical rule of no liability." *Ducote v. Boleware*, 15-0764 (La. App. 4 Cir. 2/17/16), 216 So. 3d 934, *writ denied*, 16-0636 (La. 5/20/16), 191 So. 3d 1071. She contends that unlike in *Boleware*, there is no such rule to insulate Party Central from liability for failing to shut off its go-kart track.

Factually, she urges that Markia's go-kart struck the wall "almost perfectly flush"; the kart behind her slowed but struck her on the driver's side almost immediately; and then, "almost ten (10) seconds later," two more karts traveling at a high rate of speed struck her kart. She argues that if an employee had been monitoring the track and pressed the emergency "kill switch," the secondary impacts, which appear most significant, "could have been avoided completely." She asserts that she has proved every essential

4

element of a tort: Party Central owed a legal duty to "stop the cars when a child inevitably loses control of their karts in order to avoid injury to the child from collisions"; Party Central breached that duty, because "10 seconds is more than enough time to press a button"; the breach was a substantial factor in the plaintiffs' injuries; the injuries fell within the scope of the duty; and there is adequate proof of damages. Finally, she reiterates that, unlike in *Boleware*, where the owner of a cat that bit the plaintiff was insulated from liability under La. C.C. art. 2321, there is no rule limiting the liability of an amusement park operating go-karts. She asks that the summary judgment be reversed and the case remanded for trial.

Party Central responds, first stressing all the warnings posted around the go-kart track and Ms. Watts's own admission that she knew of no rules or regulations that were violated or anything improper about the ride. It disputes two of Ms. Watts's factual assertions: (1) the discovery responses clearly showed that the track did not have a "kill switch," that would stop all cars instantly, but had a "kart commander," that would place all karts in neutral and allow them to roll to a halt; (2) the video clearly shows that the third impact occurred not 10, but 7 seconds after Markia struck the wall, and that it was not a high-speed collision but a "glancing blow."

It argues that Ms. Watts presented no evidence that using the kart commander would have prevented the third impact. It characterizes her arguments as "mere speculation," and insufficient to defeat a properly supported summary judgment. *Row v. Pierremont Plaza LLC*, 35,796 (La. App. 2 Cir. 4/3/02), 814 So. 2d 124, *writ denied*, 02-1262 (La. 8/30/02), 823 So. 2d 952; *Foster v. Patwardhan*, 48,575 (La. App. 2 Cir. 1/22/14), 132 So. 3d 495, *writ denied*, 14-0614 (La. 4/25/14), 138 So. 3d 1233.

Finally, Party Central concedes that no go-kart cases appear in Louisiana jurisprudence, but roller rink cases hold that the activity poses such obvious risks that the amusement park operator is not the insurer of patrons' safety. *Hills v. Skate Country East Inc.*, 430 So. 2d 1035 (La. App. 4 Cir.), *writ denied*, 438 So. 2d 568 (1983); *Lambert v. Wheels "R" Rolling Skate Center Inc.*, 552 So. 2d 732 (La. App. 1 Cir. 1989), *writ denied*, 556 So. 2d 1265 (1990); *Hyland v. Durr*, 212 So. 2d 158 (La. App. 4 Cir.), *writ ref'd*, 252 La. 886, 214 So. 2d 715 (1968). It also shows that another jurisdiction has approved summary judgments in favor of go-kart operators in circumstances similar to this case. *Loewenthal v. Catskill Funland Inc.*, 237 A.D. 2d 262, 654 N.Y.S. 2d 169 (2d Dept. 1997); *Garnett v. Strike Holdings LLC*, 131 A.D. 3d 817, 15 N.Y.S. 3d 786 (1st Dept. 2015). Finally, it contends that Ms. Watts offered no proof of causation, only the claim that Party Central could have stopped the karts sooner after the initial impact. It suggests that a ride attendant cannot reasonably be expected to stop *all the karts* every time one kart strikes a barrier. It seeks affirmance.

## APPLICABLE LAW

A motion for summary judgment is a procedural device used when there is no genuine issue of material fact for all or part of the relief sought by a litigant. *Murphy v. Savannah*, 18-0991 (La. 5/18/19), 282 So. 3d 1034. The summary judgment procedure is designed to secure the just, speedy, and inexpensive determination of civil actions (except for certain domestic matters) and is favored by our law. La. C.C.P. art. 966 A(2); *Murphy v. Savannah*, *supra*. A court must grant a motion for summary judgment if, after an opportunity for adequate discovery, the motion, memorandum, and supporting documents show that there is no genuine issue as to material fact

6

and that the mover is entitled to judgment as a matter of law. La. C.C.P. art. 966 A(3); *Murphy v. Savannah*, *supra*.

A defendant moving for summary judgment has the burden of pointing out to the court that there is an absence of factual support for one or more elements essential to the plaintiff's claim. Thereafter, if the plaintiff fails to produce factual support to establish that he will be able to satisfy his evidentiary burden of proof at trial, there is no genuine issue of material fact. La. C.C.P. art. 966 D(1); *Gifford v. Arrington*, 14-2058 (La. 11/26/14), 153 So. 3d 999. Mere speculation is not sufficient to create a genuine issue as to an essential element of the plaintiff's case and defeat a properly supported motion for summary judgment. *Gifford v. Arrington*, *supra*; *Mansoor v. Jazz Casino Co.*, 12-1546 (La. 9/21/12), 98 So. 3d 795. The question whether a legal duty is owed may be properly resolved by summary judgment. *Allen v. Lockwood*, 14-1724 (La. 2/13/15), 156 So. 3d 650; *Bufkin v. Felipe's La. LLC*, 14-0288 (La. 10/15/14), 171 So. 3d 851.

Appellate review of a summary judgment is de novo, with the appellate court using the same criteria that governed the trial court's determination, i.e., whether there is any genuine issue of material fact and whether the mover is entitled to judgment as a matter of law. *Murphy v. Savannah*, *supra*; *Staten v. Glenwood Reg'l Med. Ctr.*, 53,220 (La. App. 2 Cir. 1/29/20), 290 So. 3d 280, *writ denied*, 20-00591 (La. 9/23/20), 301 So. 3d 1184.

Every act whatever of man that causes damage to another obliges him by whose fault it happened to repair it. La. C.C. art. 2315 A. Louisiana courts have adopted a duty-risk analysis in determining whether liability exists under the facts of a given case. Under this analysis, the plaintiff must

prove (1) the defendant had a duty to conform his or her conduct to a specific standard of care; (2) the defendant failed to conform his or her conduct to that standard; (3) the defendant's substandard conduct was a cause-in-fact of the plaintiff's injuries; (4) the defendant's substandard conduct was a legal cause of the plaintiff's injuries; and (5) actual damages. *Bufkin v. Felipe's La.*, *supra*; *Pinsonneault v. Merchants & Farmers Bank & Trust Co.*, 01-2217 (La. 4/3/02), 816 So. 2d 270.

The proprietor of a place of amusement is not the insurer of the safety of his patrons. *Hutchinson v. Knights of Columbus Council No. 5747*, 03-1533 (La. 2/20/04), 866 So. 2d 228; *Downs v. E.O.M. Ent. Inc.*, 43,654 (La. App. 2 Cir. 10/22/08), 997 So. 2d 125. He is required to exercise only that degree of care that would be expected of an ordinarily careful and prudent person in his position, and his duty is fulfilled when he makes the place as little dangerous as such a place can reasonably be made, having regard to the contrivances necessarily used in conducting such a place. *Id.* In short, the owner or operator has the duty of exercising reasonable care for the safety of persons on his premises and the duty of not exposing them to unreasonable risks of harm or injury. *Mundy v. Department of Health & Human Res.*, 620 So. 2d 811 (La. 1993); *Downs v. E.O.M. Ent.*, *supra*.

## DISCUSSION

On de novo review, we find that Ms. Watts made a sufficient showing under Art. 966 D(1) as to two of the elements outlined in *Bufkin*, *supra*. She showed the first element, the existence of a duty to exercise ordinary care to make the place as little dangerous as such a place can reasonably be made. *Hutchinson v. Knights of Columbus*, *supra*; *Downs v. E.O.M. Ent.*, *supra*. She also showed the fifth element, damages.

8

As for the other elements, Louisiana has no published cases involving the duty owed by the owner of a go-kart track. However, as noted by Party Central, cases involving skate rinks utilize a duty of reasonable care. *Hills v. Skate Country East*, *supra*; *Lambert v. Wheels "R" Rolling Skate Ctr.*, *supra*; *Hyland v. Durr*, *supra*. The duty must be inferred from that imposed on "the proprietor of a place of amusement," which is ordinary and prudent care. *Hutchinson v. Knights of Columbus*, *supra*; *Downs v. E.O.M. Ent.*, *supra*. Since the case of *Murray v. Ramada Inns Inc.*, 521 So. 2d 1123 (La. 1988), we will not apply assumption of the risk; however, inherent risk may apply, as courts must have "regard to the contrivances necessarily used" in running an amusement park. *Hutchinson v. Knights of Columbus*, *supra*; *Downs v. E.O.M. Ent.*, *supra*; *Pate v. Skate Country Inc.*, 96-0364 (La. App. 4 Cir. 10/9/96), 682 So. 2d 288.

Ms. Watts attempted to create a genuine issue by constantly referring to the device in question as a "cut-off switch" or a "kill switch," implying that activating it would suddenly stop the motion on the track. However, the summary judgment evidence is that the device is a "kart commander," which will place all the karts in idle and allow them to coast from speed to rest. Ms. Watts offered no evidence to contradict this; her argument that the device might have done more than the evidence shows is mere speculation, and not sufficient to create a genuine issue. *Gifford v. Arrington*, *supra*; *Mansoor v. Jazz Casino*, *supra*. Further, the record lacks any evidence to show that a true "kill switch," with a capacity to stop all motion instantly, is possible from the standpoint of physics, or even desirable from a standpoint of safety. Because there is nothing to show that a true "kill switch" exists

9

and should have been present on this track, we find no genuine issue as to whether Party Central breached its duty by not having one.

Ms. Watts also argues that even with a normal delay to perceive Markia's plight on the track and to activate the kart commander, Party Central breached its duty of care by not doing so fast enough to prevent the second impact, some 10 seconds after Markia struck the railing. We have closely watched the surveillance video, which has an embedded timer on the screen. This clearly shows that the second impact occurred *7 seconds*, and not 10, after Markia was immobilized, and the action is very quick (as would be expected on a go-kart track). The record contains no evidence that quicker action by anybody at Party Central would have prevented the second impact. Ms. Watts's contention that "something" could have been done is mere speculation and does not create a genuine issue that Party Central's conduct was a legal cause of Markia's injuries. Rather, the record shows that Markia's unfortunate loss of control several minutes into the ride was the cause of her injuries.

Ms. Watts further argues that Party Central was understaffed, its employees were not properly trained, and the track was not being properly monitored. We are constrained to note that, in her deposition, Ms. Watts candidly agreed that she was aware of nothing Party Central did to cause the accident: "I really can't say, because I don't feel like – I don't know. I don't really – I can't really say that it's something that they did wrong." Later, in an affidavit, she stated, "I believe Party Central was probably understaffed and had no one to continuously monitor the track or hit the emergency kill switch." However, she offered no proof, such as affidavits from Party

10

Central employees, to support any of these claims, leaving them in the realm of mere speculation.

Finally, Ms. Watts contends that Party Central is not entitled to judgment as a matter of law, because of the statement in *Ducote v. Boleware*, *supra*: "Although it generally is inappropriate to resolve negligence cases on summary judgment, an exception has been recognized when there is a categorical rule of no liability." In *Ducote*, the court found such a rule, La. C.C. art. 2321's requirement of scienter – essentially, a pet cat gets its "first bite free" – and affirmed the summary judgment in favor of the cat's owner. We do not interpret *Ducote* to hold that, in the absence of a statute limiting liability, a defendant cannot obtain summary judgment on the issue of negligence. In fact, the existence of a legal duty may indeed be resolved on summary judgment, if the plaintiff fails to prove it. *Allen v. Lockwood*, *supra*; *Bufkin v. Felipe's La.*, *supra*; *Chreene v. Prince*, 52,351 (La. App. 2 Cir. 9/26/18), 256 So. 3d 501. Such is the case here; the record does not refute Party Central's showing that it is entitled to judgment as a matter of law.

The assigned error lacks merit.

## CONCLUSION

For the reasons expressed, the judgment is affirmed. All costs are to be paid by Cardenna Watts, individually and as tutrix of Markia Foster.

**AFFIRMED**.

11