# STATE OF LOUISIANA
## COURT OF APPEAL, THIRD CIRCUIT

## 07-851

**JERRY RAMOS**

**VERSUS**

**STATE OF LOUISIANA,
THROUGH THE DEPARTMENT OF
TRANSPORTATION AND DEVELOPMENT, ET AL.**

**\*\*\*\*\*\*\*\*\*\***

APPEAL FROM THE
THIRTY-FIFTH JUDICIAL DISTRICT COURT
PARISH OF GRANT, NO. 6242
HONORABLE W. PEYTON CUNNINGHAM, JR., JUDGE PRO TEMPORE

**\*\*\*\*\*\*\*\*\*\***

**MARC T. AMY
JUDGE**

**\*\*\*\*\*\*\*\*\*\***

Court composed of John D. Saunders, Marc T. Amy, and Billy Howard Ezell, Judges.

**REVERSED AND REMANDED.**

**Robert L. Beck, Jr.
Rivers, Beck, Dalrymple & Ledet
Post Office Drawer 12850
Alexandria, LA   71315-2850
(318) 445-6581
COUNSEL FOR PLAINTIFF/APPELLANT:**
    **Jerry Ramos**

**Laurel I. White
Assistant Attorney General
Post Office Box 1710
Alexandria, LA   71309
(318) 487-5944
COUNSEL FOR DEFENDANT/APPELLEE:**
    **State of Louisiana, Through the Department
    of Transportation and Development**

AMY, Judge.

The plaintiff was seriously injured after falling from a rope swing into a creek allegedly located on a right-of-way of the State of Louisiana, Department of Transportation and Development. After other defendants were dismissed, DOTD filed a motion for summary judgment, arguing that it was entitled to recreational use immunity under La.R.S. 9:2791 and La.R.S. 9:2795 and that the plaintiff could not establish DOTD's liability for his injuries. The trial court granted DOTD's motion for summary judgment. The plaintiff appeals. For the following reasons, we reverse and remand.

## Factual and Procedural Background

On July 28, 1986, the plaintiff, Jerry Ramos, and his friend, Janice Box, visited an area at Big Creek in Grant Parish referred to in the record as the "Second Bridge" swimming hole. The area is located near U.S. Highway 165.

The plaintiff testified that he noticed a rope tied to a tree and that he and Ms. Box took turns swinging from the rope and landing in the creek. The plaintiff swung from the rope three or four times without incident. On his final swing, the rope "slipped through [his] fingers" and "[he] immediately started spinning towards the water." The plaintiff's head struck the bottom of the creek, rendering him a quadriplegic.

The plaintiff filed suit against DOTD, the Town of Pollock, the Grant Parish Police Jury, and Henry Hearne in July 1987. The latter three defendants were dismissed by summary judgment due to a determination that each lacked an ownership interest in the property. This court affirmed the motions. *See Ramos v.*

*State of Louisiana, DOTD* (an unpublished opinion rendered March 14, 1990 and bearing the docket number 88-1141).[1]

In June 2006, DOTD filed the motion for summary judgment now before the court, asserting immunity pursuant to La.R.S. 9:2791 and La.R.S. 9:2795. It also argued that the plaintiff would be unable to establish DOTD's liability for the accident. The trial court granted the motion without expressing the theory under which it granted relief.[2] The plaintiff appeals, asserting error in a determination that DOTD was immune to suit or that no genuine issues of material fact existed as to liability.

## Discussion

*Standard of Review*

Summary judgment will be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to material fact, and that mover is entitled to judgment as

---

[1] This court observed:

[T]he dispute as to the location of the property line is not material, since even if Hearne's property did begin 100 feet east of the center line of U.S. Highway 165, the accident did not happen on his property.

The summary judgment likewise establishes that the swimming hole was outside the corporate limits of the Town of Pollock, and that neither the Town nor the Grant Parish Police Jury had any ownership or proprietary interest in the swimming hole.

The summary judgments were proper for these reasons alone. It is therefore not necessary that we discuss the defense raised pursuant to the landowner liability statutes.

[2] The reasons for ruling reveal only that:

The Court, after considering the pleadings, testimony adduced, the law and evidence being in favor thereof, judgment is rendered sustaining the State's Motion for Summary Judgment finding there are no genuine issues of material fact and the State of Louisiana, through the Department of Transportation and Development, is entitled to judgment as a matter of law, dismissing plaintiff's claim with prejudice, at his cost.

2

a matter of law." La.Code Civ.P. art. 966(B). As for the burden of proof, Article 966(C)(2) provides:

> The burden of proof remains with the movant. However, if the movant will not bear the burden of proof at trial on the matter that is before the court on the motion for summary judgment, the movant's burden on the motion does not require him to negate all essential elements of the adverse party's claim, action, or defense, but rather to point out to the court that there is an absence of factual support for one or more elements essential to the adverse party's claim, action, or defense. Thereafter, if the adverse party fails to produce factual support sufficient to establish that he will be able to satisfy his evidentiary burden of proof at trial, there is no genuine issue of material fact.

An appellate court reviews a ruling on a motion for summary judgment *de novo,* applying the same criteria as the trial court in considering whether summary judgment is appropriate. *Magnon v. Miller*, 06-321 (La.App. 3 Cir. 9/27/06), 939 So.2d 658.

As the trial court's reasons for ruling do not reveal the grounds on which it granted summary judgment, we review both of DOTD's arguments in support of its motion.

*Recreational Use Immunity*

DOTD first claimed immunity pursuant to La.R.S. 9:2791 and La.R.S. 9:2795. At the time of the plaintiff's injury, La.R.S. 9:2791 provided, in pertinent part:

> A. An owner, lessee, or occupant of premises owes no duty of care to keep such premises safe for entry or use by others for hunting, fishing, camping, hiking, sightseeing or boating or to give warning of any hazardous conditions, use of, structure or activities on such premises to persons entering for such purposes. If such an owner, lessee or occupant gives permission to another to enter the premises for such recreational purposes he does not thereby extend any assurance that the premises are safe for such purposes or constitute the person to whom permission is granted one to whom a duty of care is owed, or assume responsibility for or incur liability for any injury to persons or property caused by any act of person to whom permission is granted.

> B. This Section does not exclude any liability which would otherwise exist for deliberate and willful or malicious injury to persons or property, nor does it create any liability where such liability does not now exist. Furthermore, the provisions of this Section shall not apply when the premises are used principally for a commercial, recreational

enterprise for profit; existing law governing such use is not changed by this Section.

Louisiana Revised Statutes 9:2795 provided:

A. As used in this Section:

(1) "Land" means land, roads, water, watercourses, private ways and buildings, structures, and machinery or equipment when attached to the realty.

(2) "Owner" means the possessor of a fee interest, a tenant, lessee, occupant or person in control of the premises.

(3) "Recreational purposes" includes, but is not limited to, any of the following, or any combination thereof: hunting, fishing, trapping, swimming, boating, camping, picnicking, hiking, horseback riding, bicycle riding, motorized vehicle operation for recreation purposes, nature study, water skiing, ice skating, sledding, snowmobiling, snow skiing, summer and winter sports, and viewing or enjoying historical, archaeological, scenic, or scientific sites.

(4) "Charge" means the admission price or fee asked in return for permission to use lands.

(5) "Person" means individuals regardless of age.

B. Except for willful or malicious failure to warn against a dangerous condition, use, structure, or activity, an owner or land, except an owner of commercial recreational developments or facilities, who permits with or without charge any person to use his land for recreational purposes as herein defined does not thereby:

(1) Extend any assurance that the premises are safe for any purposes.

(2) Constitute such person the legal status of an invitee or licensee to whom a duty of care is owed.

(3) Incur liability for any injury to person or property incurred by such person.

"The Recreational Use Statutes were enacted to induce private owners of large acreages to open expanses of undeveloped lands for public outdoor, open land recreational purposes[.]" *Monteville v. Terrebonne Par. Con. Gov't*, 567 So.2d 1097,

4

1098 (La.1990). Because La.R.S. 9:2791 and La.R.S. 9:2795 are in derogation of a natural or common right, the statutes are subject to strict interpretation and cannot be extended beyond their obvious meaning. *Id*. In *Monteville*, the supreme court explained that, since the statutes were silent as to governmental immunity at the time under consideration, they were inapplicable to public lands and did not grant immunity to the state, its agencies, or subdivisions. *Id*. This interpretation of the statutes as they appeared at the time of Mr. Ramos's 1986 accident is controlling in the present case. Thus, La.R.S. 9:2791 and La.R.S. 9:2795 are unavailable to DOTD for this suit. *See also Socorro v. City of New Orleans, et al.*, 579 So.2d 931 (La.1991); *Insley v. Titan Ins. Co.*, 589 So.2d 10 (La.App. 1 Cir. 1991).

Neither is there merit in DOTD's assertion that LSA-R.S. 9:2795(E)[3], which initially became effective the month following the plaintiff's accident, should be applied retroactively. Rather, Subsection E constitutes a substantive addition to La.R.S. 9:2795 and is not to be applied retroactively. *See Miller v. State*, 572 So.2d 197 (La.App. 1 Cir. 1990), *writ denied*, 573 So.2d 1114 (La.1991).

As La.R.S. 9:2791 and La.R.S. 9:2795 were not applicable to the state, its agencies, or its political subdivisions at the time of this accident, DOTD's assertion that it was immune is without merit. Summary judgment on this basis would have

---

[3] Subsection E, relating to the Department of Wildlife and Fisheries for its lands and water bottoms and to political subdivisions for public parks used for recreational purposes, provides, in part:

> E. (1) The limitation of liability provided in this Section shall apply to any lands or water bottoms owned, leased, or managed by the Department of Wildlife and Fisheries, regardless of the purposes for which the land or water bottoms are used, and whether they are used for recreational or nonrecreational purposes.

> (2)(a) The limitation of liability provided in this Section shall apply to any lands, whether urban or rural, which are owned, leased, or managed as a public park by the state or any of its political subdivisions and which are used for recreational purposes.

5

been in error. Even had the statutes been applicable to DOTD at that time, it would also have been required to establish the requirements of the statute. We do not consider whether it could have done so.

*Liability*

DOTD alternatively asserted that the plaintiff could not prove the existence of a defect on the property posing an unreasonable risk of harm. DOTD's arguments focused on its assertion that it is not liable due to the plaintiff's awareness that the water depth varied underneath the rope swing.

The plaintiff's petition sought damages under theories of negligence pursuant to La.Civ.Code art. 2315[4] and strict liability pursuant to La.Civ.Code art. 2317.[5] We examine the elements traditionally required under each theory in light of the summary judgment standard and the parties' submissions. We observe that La.R.S. 9:2800, a provision setting forth limitations of liability for public bodies, is not applicable to Mr. Ramos's strict liability cause of action arising from this 1986 accident.[6]

---

[4] **Art. 2315.    Liability for acts causing damages**

   A.    Every act whatever of man that causes damage to another obliges him by whose fault it happened to repair it.

*See also* La.Civ.Code art. 2316, which provides that "[e]very person is responsible for the damage he occasions not merely by his act, but by his negligence, his imprudence, or his want of skill."

[5] **Art. 2317.    Acts of others and of things in custody**

   We are responsible, not only for the damage occasioned by our own act, but for that which is caused by the act of persons for whom we are answerable, or of the things which we have in our custody. This, however, is to be understood with the following modifications.

[6] Presently, whether based on negligence or strict liability, a plaintiff pursuing a claim against a public entity such as DOTD must prove that: 1) the property causing the damage was in the public entity's custody; 2) the property was defective due to a condition creating an unreasonable risk of harm; 3) the public entity had actual or constructive notice of the defect; and 4) the defect was a cause-in-fact of the plaintiff's injuries. *Toston v. Pardon*, 03-1747 (La. 4/23/04), 874 So.2d 791. The notice element is supplied by La.R.S. 9:2800 and renders the elements identical under either theory. However, Mr. Ramos's accident occurred in 1986. In 1999, the Louisiana Supreme Court recognized that the notice element of La.R.S. 9:2800 was unconstitutional as it conflicted with

6

In *Kent v. Gulf States Utilities Co.*, 418 So.2d 493 (La.1982), the Louisiana Supreme Court explained that, a plaintiff pursuing a negligence claim against an owner of a thing causing damage must prove that 1) the thing created an unreasonable risk of injury; 2) damage resulted; 3) the owner knew or should have known of the risk; and that 4) the owner failed to take adequate steps to render the thing safe or prevent future damage. A plaintiff pursuing a traditional strict liability claim against a public body under La.Civ.Code art. 2317 must prove these same elements, but is relieved of proving that the owner knew or should have known of the risk involved. *Id.* Again, La.R.S. 9:2800 is inapplicable to this case.

DOTD questioned the plaintiff's ability to establish an unreasonable risk of injury, necessary for either cause of action, and/or notice, which we have observed is applicable only to the negligence claim. We consider these elements in light of the parties' submissions in support of and in opposition to the motion for summary judgment.

Unreasonable Risk of Injury

A landowner owes a duty to discover an unreasonably dangerous condition and to either correct the condition or warn of its existence. *Socorro*, 579 So.2d 931. However, the inquiry as to whether a condition is unreasonably dangerous, *i.e.*, whether it poses an unreasonable risk of injury, is a difficult one and requires "a balance of the intended benefit of the thing with its potential for harm and the cost of prevention." *Id*. at 939. The decision maker may consider a broad range of social and economic factors, "including the cost to the defendant of avoiding the harm, as

---

La.Const. art. XII, § 10(A)'s waiver of sovereign immunity. *See Jacobs v. City of Bunkie*, 98-2510 (La. 5/18/99), 737 So.2d 14. Although La.R.S. 9:2800 was re-enacted in 1995, coinciding with the effective date of La.Const. art. XII, § 10(C), the provision is substantive and cannot to be applied to causes of action arising before its effective date. *Id.* Mr. Ramos is thus relieved of proving notice as an element of his strict liability claim.

well as the risk and the social utility of the party's conduct at the time of the activity." *Netecke v. State ex rel. DOTD*, 98-1182, p. 15 (La. 10/19/99), 747 So.2d 489, 498. The inquiry into whether a risk is unreasonable has been described as "a matter wed to the facts" which must be determined in light of the facts and surrounding circumstances of each particular case. *Dupree v. City of New Orleans*, 99-3651, pp. 13-14 (La. 8/31/00), 765 So.2d 1002, 1012 (quoting *Celestine v. Union Oil Co. of Cal.*, 94-1868 (La. 4/10/95), 652 So.2d 1299).

On review, we conclude that the evidence submitted in support of and in opposition to the motion for summary judgment does not preclude a determination that the presence of the rope swing over shallow water posed an unreasonable risk of injury. Stated differently, we do not find that, as a matter of law, the relationship between the rope swing over shallow water cannot be unreasonably dangerous. In this case, the plaintiff testified that the rope swing was tied to a tree, that the water depth ranged from ankle to chest depth, and that, in order to use the rope swing, he had to swing away from the tree in order to reach the deeper water. The plaintiff stated that he knew that the water was not sufficiently deep for diving and that he would typically fall from the swing and into the water feet first. The accident occurred when the rope slipped through his hand.

We find that this evidence does not require a finding that the plaintiff cannot establish an unreasonable risk of injury given the rope swing's placement over shallow water and the possibility that users could fall and be injured. Thus, summary judgment entered on this point would have been error.

We further point out that DOTD's Parish Maintenance Superintendent testified that, at the time of the accident, no measures had been taken to control access to the

8

swimming hole. No evidence was presented as to actions taken to lessen hazards or that such measures were considered in light of cost/utility factors.

Neither do we find merit in DOTD's contention that the plaintiff's familiarity with the site and his own alleged negligence in using the rope over shallow water and/or falling from the rope precludes a determination that a duty was owed or that an unreasonable risk of injury was present. This contention, which is essentially one of assumption of the risk, was squarely rejected in *Murray v. Ramada Inns, Inc.*, 521 So.2d 1123 (La.1988). Recognizing that the adoption of the comparative law principles of La.Civ.Code art. 2323[7] subsumed the doctrine of assumption of risk, the supreme court explained that:

> [I]n any case where the defendant would otherwise be liable to the plaintiff under a negligence or strict liability theory, the fact that the plaintiff may have been aware of the risk created by the defendant's conduct should not operate as a total bar to recovery. Instead, comparative fault principles should apply, and the victim's "awareness of the danger" is among the factors to be considered in assessing percentages of fault.

*Id.* at 1134. The supreme court further discounted the defendant's related argument, one also raised by DOTD in the present case, that they owed no duty to protect a plaintiff from a danger of which he had knowledge. Such a bar to recovery would, again, circumvent the principles of Article 2323. *Id.* "A defendant's duty should not

---

[7]      **Art. 2323. Comparative fault**

        A. In any action for damages where a person suffers injury, death, or loss, the degree or percentage of fault of all persons causing or contributing to the injury, death, or loss shall be determined, regardless of whether the person is a party to the action or a nonparty, and regardless of the person's insolvency, ability to pay, immunity by statute, including but not limited to the provisions of R.S. 23:1032, or that the other person's identity is not known or reasonably ascertainable. If a person suffers injury, death, or loss as the result partly of his own negligence and partly as a result of the fault of another person or persons, the amount of damages recoverable shall be reduced in proportion to the degree or percentage of negligence attributable to the person suffering the injury, death, or loss.

9

turn on a particular plaintiff's state of mind, but instead should be determined by the standard of care which the defendant owes to all potential plaintiffs." *Id*. at 1136. In short, consideration of the plaintiff's own negligence is appropriate under a comparative law analysis, not under consideration of whether DOTD is independently at fault.

For these reasons, genuine issues of material fact remain with regard to whether the rope swing positioned over shallow water posed an unreasonable risk of injury.

Notice

Although the 1986 occurrence date of this accident relieves the plaintiff of proving notice of the defect in his strict liability claim, his negligence claim requires proof that DOTD knew or should have known of the risk associated with the placement of the rope swing over shallow water. *See Kent*, 418 So.2d 493.

DOTD's Parish Maintenance Supervisor, Dentis T. Chelette, testified that he was responsible for inspecting not only road surfaces, but rights-of-way as well. He explained that the area is known to him and that the creek can be viewed from the bridge above. While Mr. Chelette stated that no one had complained of people entering the property, he knew that the area was used by swimmers. When asked whether activity could be seen at the creek, he responded that: "You sure could. You could see them at night, if you go by there. They had bars built back up there, and they were camping in there, partying back up there." Mr. Chelette explained that he had not taken measures to prevent access, because he was unaware that the area was included in the DOTD's right-of-way. He responded that he knew of only one accident in the area, an injury that occurred when a swimmer jumped from the bridge and that "it occurred right at that area."

Mr. Chelette's testimony regarding awareness of activity on the property and his failure to further inspect due to a lack of knowledge that the area was included in DOTD's right-of-way indicates genuine issues of material fact as to the notice element remain. Specifically, questions exist as to whether DOTD's inspections of its rights-of-way should have included the swimming area and revealed any potential defects, including the rope swing positioned over shallow water.

As genuine issues of material fact remain with regard to both unreasonable risk of injury and notice, the summary judgment entered in favor of DOTD was in error.

## DECREE

For the foregoing reasons, the judgment of the trial court is reversed. This matter is remanded for further proceedings. All costs of this appeal are assessed against the defendant, State of Louisiana, Department of Transportation and Development in the amount of $4,337.05.

**REVERSED AND REMANDED.**